[Crim. No. 2190. Second Appellate District, Division One.—July 26, 1932.]

THE PEOPLE, Respondent, v. OLIVE CLARK DAY, Appellant.

Lorrin Andrews and Edward Moran for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy C. Becker, Deputy District Attorney, for Respondent.

HOUSER, J.—From a judgment of conviction of the crime of contributing to the delinquency of a minor, and from an order by which her motion for a new trial was denied, defendant appeals to this court.

Although appellant's brief on appeal contains several different specifications of error, upon each of which she relies for a reversal of the judgment, it is deemed necessary that but one of such assignments of error should occupy the attention of this court. It relates to the admissibility on the trial of the action of the alleged confession of defendant.

With reference only to the question submitted to the trial court which related to the admissibility of such confession, it appears that on the part of defendant many facts were admitted in evidence which tended to show that the alleged confession of defendant was not made either freely or voluntarily, or without hope of immunity being extended to defendant, either by the district attorney or by the trial court. But as to such facts as were contradicted by evidence submitted by the People, in the decision herein none of them should be, nor is, taken into consideration by this court. However, the record herein discloses the following undisputed facts: At the home of defendant, in the night-time, or "late in the evening", on February 25, 1931, without a warrant of arrest, but by means of showing their "credentials", which consisted of a "badge" worn by each

of two so-called "investigators" from the office of the district attorney, against the wishes of defendant and over her objection thereto, she was "taken into custody" but "not arrested". From her home she was taken by the "investigators" to the office of the district attorney, where she was questioned. Without any criminal charge being first filed or made by any person against defendant, she was then taken to a room in a hotel where she was kept "in custody" from February 25 to March 2, under constant guard by two women "investigators" from the office of the district attorney, during which time, not only by her guards but as well by other "investigators" connected with the office of the district attorney, she was questioned "at intervals", or "from time to time", not only relative to the offense of which she was subsequently charged and convicted, but also in connection with her knowledge of facts which were presumed to be material to the prosecution of another person on a charge which was similar to the charge which a considerable time later was made against defendant. On one occasion during her confinement in the hotel, accompanied by a guard, defendant was permitted to keep an appointment with the individual to whom reference has just been had, for the purpose of obtaining evidence intended to be used on the trial of a criminal action against that individual. On another occasion, under similar restraint, she was permitted to go to her home for the purpose of obtaining for her use some personal wearing apparel. One of the "investigators" testified that "she (defendant) cried on one or two occasions a little bit".

Relative to the question of whether the confession by defendant was made freely and voluntarily, a part of the testimony given by defendant, which in no way was contradicted by any witness, included the following: " . . . I couldn't even, without permission, I couldn't go any place that I wanted to. I had my car in Long Beach, and I was forbidden to go for my car. . . . I was never alone; I was always with Miss Fairchild or Miss Six. . . . They finally let me 'phone the place where I worked, so I could tell them why I wasn't showing up to work. . . . She (one of the guards) said the district attorney's office was paying them (the hotel bills); and they would take care of me for six months, if necessary, until they got through with me as a

witness; that she had had the Pringle girl there, and that it was their general place to keep witnesses. . . . Well, of course, I was scared to death. I had been there by that time, for days, and they had been after me all the time— when one of them wasn't, the other one was. One was always with me, and trying to tell me what I should do; and if I didn't do it, what was going to happen to me; and I was just scared to death. . . . Mr. White (an "investigator") and I talked for a while about different things, and then he said, 'Well, Kiddy, it is time we were getting down to brass tacks; we can't keep you any longer. If you don't make a statement, I have got to turn you over to the authorities. You have been in here for days, and you are either going to make this statement, or you are not.' He said, 'Of course, you know when the time comes I am going to have to say that I didn't promise you any immunity, but you can read between the lines. . . . ' . . . I was scared to death; I thought they had me in their power, and all they had to do was to say the word and I would go to the federal penitentiary. I thought that, anyway. They said they had. . . . I think the ten days I spent in the district attorney's custody was the horror of my life. . . . I wanted to see one (a lawyer) the very first day I was there, but they told me not to see one; that I was going to be a witness, and that I should not see an attorney. And later on a lawyer came up and spoke to me in the court room, and Miss Fairchild (one of the guards) said (to him), 'You don't need to talk to Mrs. Day; she don't need an attorney.' "

It also appears from uncontradicted testimony given by defendant that besides the two guards, on one evening after defendant was taken to the hotel, for a considerable length of time four other persons were in the room where defendant was kept in custody, one of whom was also an "investigator" and two of the others were persons who likewise were either under arrest or who theretofore had been charged with a criminal offense in some manner connected with the particular offense of which defendant later was convicted. The defendant also testified that at no time before she made her statement or confession was she informed that any statement made by her would be used against her; that she was "very nervous and upset, and particularly worried about this fed-

110

eral thing"; that she was practically "beside herself" in making the statement.

In the cases of *People* v. *Loper,* 159 Cal. 6 [Ann. Cas. 1912B, 1193, 37 L. R. A. (N. S.) 934, 112 Pac. 720]; *People* v. *Borello,* 161 Cal. 367 [137. L. R. A. (N. S.) 434, 119 Pac. 500]; *People* v. *Clark,* 55 Cal. App. 42 [203 Pac. 781]; *People* v. *Quan Gim Gow,* 23 Cal. App. 507. [138 Pac. 918]; and *Bram* v. *United States,* 168 U. S. 532 [42 L. Ed. 568, 578, 18 Sup. Ct. Rep. 183], many former adjudicated cases are reviewed and the law is restated which relates generally to the admissibility of confessions of a defendant in a criminal action, and particularly with reference to situations which are analogous to that portrayed by the facts hereinbefore set forth. In principle, the authorities are in complete harmony one with the other that in circumstances describing a situation even less powerful in its probable effect upon the free will of a defendant than appears prevailed in the instant case, the confession of guilt by a defendant should never be admitted in evidence. The research of industrious counsel for the People has failed to disclose any authority which would indicate that a rule to the contrary has ever obtained within either the jurisdiction of this state or of any other state in the Union. The case of *People* v. *Dye,* 119 Cal. App. 262 [6 Pac. (2d) 313], contains the latest expression of opinion on the subject either by the Supreme Court or the Court of Appeal of this state. Therein may be found a fairly complete *résumé* of legal principles, accompanied by judicial precedent, which pertain to a proper discussion of such questions as may be here involved; and it is deemed unnecessary to herein restate such principles. It is enough to assert that by all authority a confession of a defendant obtained as was shown even by the uncontradicted and undisputed evidence hereinbefore set forth is inadmissible in evidence.

 Concerning the probable effect which the confession of guilt of defendant had upon the verdict of the jury, it is to be noted that on the part of the prosecution, aside from the testimony of the complaining witness, who was of the age of seventeen years and whose alleged delinquency formed the foundation of the complaint against defendant, no supporting evidence of any kind or character, other than the

confession of defendant, was adduced on the trial of the action. Also that the testimony of the complaining witness was not there given by such witness personally, but on an assumedly proper showing by the prosecution to the effect that after diligent search had been made for such witness she could not be found, nor produced at the trial, her testimony given at the preliminary examination of defendant was read in evidence. It also appeared that, like the defendant herein, preceding the giving of her testimony the prosecuting witness had not been "arrested", but that she had been "in custody" of "investigators of the office of the district attorney", in a room in a hotel, for a period of *five months*, during all of which time she had paid neither board nor hotel bills, nor had she ever been requested so to do; to the contrary, that all such bills were paid by the "investigators" who had the prosecuting witness in custody. Furthermore, that during the period of her detention her custodians took her to the theater and to the movies "once in a while"; took her out riding in automobiles; and occasionally took her to the office of the district attorney.

Considering the recognized possibility of inaccuracy, or falsehood in testimony relating to offenses of the character of that of which defendant was charged, in connection with the facts hereinbefore set forth which immediately preceded the date when the prosecuting witness gave her testimony, with the consequent inherent doubt regarding the truth of such testimony, it cannot be said that the confession of guilt by defendant of her criminal participation in the alleged delinquency of the prosecuting witness did not influence the jury in the rendition of its verdict; and since it appears that on the trial of the action, by permitting the jury to consider in evidence the confession of defendant, she was prejudiced in her substantial rights in the premises, it follows that the judgment and the order by which her motion for a new trial was denied should be reversed. It is so ordered.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 9, 1932, and an application by respondent to have the cause heard in the

Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 25, 1932.