## STATE v. CRANK et al.

No. 6567.  Decided October 23, 1943.  (142 P. 2d 178)

334

*Knox Patterson* and *O. A. Tangren,* both of Salt Lake City, for appellants.

*Grover A. Giles,* Atty. Gen., and *S. D. Huffaker,* Asst. Atty. Gen., for respondent.

LARSON, Justice.

Defendants, convicted in the District Court of San Juan County, of the crime of murder in the second degree, appeal, and for reversal of the verdict and judgment, present the following propositions:

1. That the information did not state or charge a public offense.

2. That the court erred in denying defendants' motion to quash the information, made upon the ground they had no proper preliminary hearing because the magistrate did not advise defendants of their right to counsel; that the magistrate did not provide counsel for defendants when they were unable to obtain counsel themselves; and that hearsay testimony was received at the preliminary hearing.

3. That there is no proper proof of the corpus delicti; and the corpus delicti was not proved before the alleged confessions were received in evidence.

4. That the alleged confessions of defendants were improperly received in evidence.

5. That the court erred:
   (a) In commenting on the evidence.
   (b) In instructing the jury.
   (c) In refusing to grant a new trial for misconduct of a juror.

We consider them seriatim. The facts will be stated as they become pertinent to the questions involved.

Defendants are Navajo Indians whose knowledge and use of the English language is very limited, if not nil. They live near the Utah-Arizona border roaming into both states at pleasure. In 1941, the Federal Grazing Service was having disputes with some of the Navajos over grazing rights under the Taylor Grazing Act, 43 U. S. C. A. § 315

et seq. On July 20, 1941, defendant Crank was arrested, presumably for violation of the Taylor Act, and taken to a jail in Arizona. He was, thereafter, moved from jail to jail in Arizona, until January, 1942, when he was brought to Salt Lake City. He was later taken to Monticello, San Juan County, where he was held in the county jail until May, 1942, when he was put on trial on the charge involved in this case. The other defendant, Chief, was arrested September 27, 1941, also for his conduct in respect to violation of the Grazing Act. He likewise was transferred from one Arizona jail to another, but not in company with Crank, until January, 1942, when both were brought to Salt Lake City, and thereafter were kept in the same jail. While they were held in the Arizona jails they purportedly confessed the murder of a white man some ten or twelve years previous, in San Juan County. It appears there were three purported confessions by each, varying from each other in various particulars and being quite different from the testimony given by the defendants in court at the trial. On January 21, 1942, a complaint was filed before a justice of the peace in San Juan County, charging the defendants with murder in the first degree. After preliminary hearing, they were informed against in the District Court and in May, 1942 trial was had and verdict of guilty of murder in the second degree rendered. They appeal.

1. The complaint and the information founded thereon charged defendants with murder in the first degree in the following words:

"That the said defendants, Jack Crank and John Chief, at the time and place aforesaid [San Juan County, Utah] did willfully, premeditatedly, deliberately and with malice aforethought, murder a human being, designated by the name of John Doe, his true name being to the accuser unknown."

It is argued that the information is insufficient in that it neither names the individual allegedly murdered, nor does

it describe him with sufficient detail to avoid the possibility of defendants being twice put in jeopardy for the same offense. The statute, Sec. 105-21-8, U. S. C. 1943, reads:

"(1) The information or indictment may charge, and is valid and sufficient if it charges the offense for which the defendant is being prosecuted in one or more of the following ways: * * *.

"(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged * * *."

Sec. 105-21-9 then provides for a bill of particulars when necessary to give the defendant information to enable him to better defend the case. Sec. 105-21-47 gives short forms for charging certain offenses, stating for murder merely "A. B. murdered C. D."

An information in the short form provided by statute has been repeatedly held sufficient by this court. *State* v. *Spencer,* 101 Utah 274, 117 P. 2d 455; *State* v. *Hill,* 100 Utah 456, 116 P. 2d 392; *State* v. *Anderson,* 100 Utah 468, 116 P. 2d 398. But it is contended that even the short form of the statute sets forth the name of the person murdered, and such name is thereby made a requirement. This is untenable. If the name of the victim is known it should be alleged. If unknown, it should be alleged that the victim was a human being, or words of equal import, whose name was to the accuser unknown. Such allegation has uniformly been held sufficient even under the long form indictment or information. *Trumble* v. *Territory of Wyoming,* 3 Wyo. 280, 21 P. 1081, 6 L. R. A. 384; *State* v. *Sartino,* 216 Mo. 408, 115 S. W. 1015; *Reed* v. *State,* 16 Ark. 499; 30 C. J. 94, 26 Am. Juris. 329; *People* v. *Gormach,* 302 Ill. 332, 134 N. E. 756, 29 A. L. R. 1120; Bishop, New Crim. Proc. 412. There must, however, be some facts then supplied to identify the victim, to enable the defendant to prepare his defense, and to identify the crime, for the protection of defendant, in case defendant is acquitted, or placed

in jeopardy and again charged with the same offense. Under the short form pleading, however, these facts need not be alleged in the information. They are to be supplied by the Bill of Particulars, if defendant desires to have them. *State* v. *Solomon,* 93 Utah 70, 71 P. 2d 104.

Here a Bill of Particulars was supplied. Defendants evidently deemed it sufficient as they did not request a further bill. Furthermore, the information, including the Bill of Particulars, need not be so specific in detail as to itself establish the identity of the offense with that of another charge, when a defense of autriefois acquit or once in jeopardy is interposed. We discussed this point at some length in *State* v. *McIntyre,* 92 Utah 177, 66 P. 2d 879, and there pointed out that while the identity of the two offenses may be established by the pleadings, it may also be established by evidence, when the pleadings do not satisfactorily show the identity. This point is resolved against appellants.

2. Appellants' second point is that the court erred in not quashing the information on the ground that they had not waived, and had not been given, a proper preliminary hearing. A preliminary hearing, unless waived by the defendant, with the consent of the state, is a prerequisite to a valid information. Art. 1 Sec. 13, Constitution of Utah. Any objections based upon the want of, or irregularities in, a preliminary hearing must be taken before pleading to the information. Sec. 105-16-2, U. C. A. 1943. Appellants were not represented by counsel at the preliminary hearing, and insist that before they could be given a legal preliminary hearing, it was incumbent upon the magistrate to advise them of their rights to counsel; and to appoint counsel for them, if they could not provide counsel for themselves. They also argue that hearsay evidence was received at the preliminary, and acted upon by the magistrate, which vitiated that proceeding. This matter is but very slight mentioned in the briefs, but was emphasized in oral argument. The statute, Sec. 105-15-1, U. C. A., provides that when a de-defendant, upon arrest, is brought before a magistrate,

charged with commission of a public offense, the magistrate "must immediately inform him of the charge against him and of his right to the aid of counsel in every stage of the proceedings." Defendants were first arraigned before the magistrate January 27, 1942, and the record of that date shows that they were without an attorney; it discloses that "they were advised of their legal rights." From the justice's docket it does not appear that there was an interpreter present at that time, or that anything then said was intelligible to, or was interpreted to defendants, neither of whom understood the English language. However, the cause was set for preliminary hearing on March 2, 1942, and defendants remanded to custody. On such date, the following proceedings were had as shown by a reporter's transcript: The District Attorney represented the state; defendants present without counsel. Two men, Charles Ashcroft, a white man, and witness against defendants, and Dan Phillips, a Navajo, were sworn as interpreters. The District Attorney then stated that he wanted the record to show that on the 27th day of January, defendants were advised through an interpreter that they were entitled to counsel, and that the court would give them time to get counsel if they desired, but that the court had no authority to appoint counsel for them. When defendants were asked if they were ready to proceed with the hearing, Mr. Ashcroft, one of the interpreters, and a witness said: "I think it would be a good idea to explain to these boys that they have been given the privilege to obtain counsel. There's a lot about this these boys don't understand along these lines, being uneducated, and I think it would be a good idea if the interpreter would interpret it to them." The justice then said to Phillips, the Navajo interpreter: "You tell these boys that the time from when we met before until now was their time to have obtained counsel or have gotten a lawyer to defend them in this case, so they understand that. And ask them if they have a man that they want, or men that they want to defend them to see that they get their just dues." When this had

been interpreted to the defendants, the interpreter said to the court: "They say, 'we haven't got nobody to defend us.' He says 'We sent word to you to see if we could get an attorney for us,' which I didn't know until he just mentioned it here now * * * so he has nobody to defend him." It was Crank who had been speaking. The answer of Chief as given by the interpreter: "He says: 'Whatever it is, it is okeh with him.' 'We haven't got no defenses.' " The court said: "This court has no authority to appoint counsel. If the individuals, the defendants in this case want counsel they must procure their counsel." Interpreter: "They must be postponed, you mean?" The court: "No. They are responsible for getting their own counsel."

The complaint was then read to them through the interpreter. After some further discussion, the court said: "They are depending on Mr. Ashcroft to see that they get a square deal." (Ashcroft, an agent of the U. S. Indian Service was a witness for the state.) Interpreter: "Yes." After some further discussion as to the nature of a preliminary hearing, they were again asked if they were ready to proceed. The answer of the interpreter: "Yes they are ready. 'But I will get the attorney for me', he says, 'to defend me, and we will let you folks take the witnesses on the murder case on your side' he says, 'when I first came here, I told you gentlement here,' he says, 'my governor,' and 'try to do the best you can for me, whatever is lawful for you people to do in my case,' he says, 'I am willing for you folks to go ahead, whatever its possible to be done, I am glad for you to take it up for me.' " This was Crank's statement, and then translating for Chief, the interpreter proceeds: "my government will do the best it can in the future for me; that all I can say." Witnesses were then called.

It is evident the defendants certainly were in the fog as to their rights, the proceedings and their meaning, although they understood they were involved in some kind of a charge for murder, from the talks they had with Ashcroft and others during the months of incarceration before they were

charged with murder. It is also evident they were expecting the Indian Service, represented by Mr. Ashcroft, to protect their legal rights. If any one ever needed an attorney at a preliminary, these defendants did. But the questions are: Had the justice the power and duty to appoint counsel? Does the absence of counsel vitiate the proceedings? There is no statutory authority for appointment of counsel in any criminal proceeding by a justice of the peace. The statute merely requires the justice to advise them of their right to counsel, and to give them time to procure counsel. It requires the officer to take a message to any counsel they request within the precinct. Sections 105-15-1 and 2, U. C. A. When a defendant is arraigned in the District Court the statute provides that when arraigned, if defendant desires counsel, but is unable to employ one, the court must assign counsel to represent him. Sec. 105-22-12, U. C. A. The Constitution Art. 1 Sec. 12, declares that: "In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel." This constitutional right is reinforced and assured in the district court by the provision for assignment of counsel by the court. In the justice's court, while the constitutional provision protects defendant against denial of his right to counsel, there is no provision in law for assuring him of the benefits of counsel. The District Court, without any statute so providing, has inherent power to direct an attorney to appear and defend one accused of crime. The attorney by virtue of his license and membership in the Bar is an officer of the court, charged with the duty of aiding the court in the administration of justice. *Ruckenbrod* v. *Mullins,* 102 Utah 548, 133 P. 2d 325.

We confidently believe that in a case involving a capital offense, no member of the bar within a reasonable distance would refuse an invitation or request of the justice to assist in the preliminary hearing of an indigent accused, especially one so ignorant of the English language and the operation of legal machinery that he evidently would not comprehend

what was taking place. We also believe that where there is no attorney whom the justice could invite in such case, the District Court upon such showing and request by the justice, would assign counsel to represent such defendant at the preliminary hearing under its power as defined in the Ruckenbrod case.

Does the absence of counsel at a preliminary hearing, when accused does not specifically waive the aid of counsel vitiate the proceedings and the order holding defendant to answer in the District Court? That the trial of the accused in the District Court, unless the accused waived the presence or aid of counsel, would be a nullity, will probably not be questioned by any member of the bar. But since the justice has no authority or power to appoint counsel for a defendant at a preliminary hearing, the accused could indefinitely prevent the case going forward by the simple expedient of not employing counsel, if the hearing could not be had without the presence of counsel. But to safeguard the accused as far as possible, provision is made for time and all reasonable opportunity for accused to have counsel at the preliminary. And the justice must inform accused of his right to counsel, allow him a reasonable time to procure the same, see that his messages and requests are sent to attorneys requested, and even allow a reasonable time for counsel to appear after the time for hearing arrives, before proceeding if counsel is not present at that time. Secs. 105-15-2 and 3. We must conclude therefore that after these rights are given the accused, the failure to have counsel at a preliminary hearing does not vitiate the proceedings. Such is the holding of the California court under statutes substantially the same as ours. *People* v. *Campos,* 10 Cal. App. 2d 310, 52 P. 2d 251; *People* v. *Crowley,* 13 Cal. App. 322, 109 P. 493. See also *State* v. *Cano,* 64 Utah 87, 228 P. 563; *State* v. *Mewhinney,* 43 Utah 135, 134 P. 632, L. R. A. 1916D, 590, Am. Cas. 1916C, 537; *State* v. *Green,* 78 Utah 580, 6 P. 2d 177.

It is argued that the information should have been quashed because hearsay evidence was received and acted upon by the justice at the preliminary hearing. At that hearing, one Hawkins testified that he was present when Ashcroft had a conversation with defendants in the Navajo language. Hawkins did not understand Navajo, but testified as to what Ashcroft told him the defendants said, in the form of a purported confession. This conversation was not had in any legal proceeding, nor had Ashcroft been sworn as an interpreter. The testimony of Hawkins was hearsay, and of course should not have been received by the justice. But after the testimony of Hawkins, Ashcroft was sworn and testified to the contents of the same conversation with defendants. His testimony was not hearsay, so the same evidence was properly before the court, and therefore it cannot be said that the justice acted upon the testimony of Hawkins. Furthermore, the rule seems to be fairly well settled that the sufficiency of the evidence to justify holding the accused to answer cannot be raised by a motion to quash the information. *People* v. *Campos,* supra; *People* v. *Creeks,* 170 Cal. 368, 149 P. 821; *People* v. *Serrano,* 123 Cal. App. 339, 11 P. 2d 81; *Redmond* v. *State,* 12 Kan. 172, Reprint p. 138; *People* v. *Warden of City Prison,* 56 Misc. 108, 106 N. Y. S. 139; 16 C. J. 330 ff; 22 C J. S., Criminal Law, § 345.

Contention 3 is that the purported confessions of accused were improperly received in evidence at the trial because: There was no independent evidence of the corpus delicti; and the alleged confessions were not voluntary. The first part of the problem is controlled by *State* v. *Johnson,* 95 Utah 572, 83 P. 2d 1010, 1014, where we said:

"We adhere to the doctrine that there must be independent proof of the corpus delicti before the confession can be received for the consideration of the jury, and that the corpus delicti, as so used in a homicide case, involves two elements: The fact of the death, and the fact that it was brought about or induced by a criminal agency. * * * These facts need not be conclusively proved and established

beyond a reasonable doubt before a confession may be received in evidence, for a literal application of such a rule would require the jury as finders of the facts to first render a special verdict as to these matters and then hear evidence as to the identity of the guilty agent and find another verdict on that score. * * *

"A dead body is found with the skull mashed in, or finger marks upon the throat with the bulging, protruding eyes and tongue and dark colored lips of the strangled person, or a bullet hole in the brain, under circumstances which exclude any inference of accident or suicide. There we have direct evidence of the death and cogent and irresistible proof of the violence; the one the cause, the other the effect, establishing the apparent existence of a criminal fact demanding investigation. This, the corpus delicti, raises two other questions for inquiry: Who is the deceased, and who caused him to die. These may now be established by any kind of competent evidence which convinces the conscience of the jury, and because a basis has been furnished upon which inferences may stand and presumptions have strength, they may be proved by the confession of the accused."

Of course, in some cases, the proof of the corpus delicti may bring in the confession, because the confession itself is so linked in time and place with the commission of the offense that as a practical matter the proofs of the two are not segregable. This however, does not mean that in a murder case the state may prove a confession without some proof, other than the confession of the accused that there has been a death and that it probably was brought about by unlawful means. In the instant case, independently of the confessions the state offered the following evidence of the corpus delicti: That officers of the Indian Service went to a point near the San Juan River in the State of Utah, and a short distance north of the Arizona line. There in a shallow grave they found a human skeleton lying on its face, and with the shoes still on its feet. A short distance from the grave, beneath a partially burned cedar tree, were found metal and glass objects, and some exploded rifle shells. Upon an examination of the skull of this skeleton, doctors testified that death had probably been caused by fractures of the skull; that there were three fractures,

two on the right side of the head, and one on the left side. Doctor's testimony was also to the effect that the injuries would cause death, and had probably been administered with a blunt instrument, and were sustained, if not during life, at least while there was a fleshy covering on the skull. The country where the skeleton was found was relatively flat, no cliff being nearby from which the deceased might have fallen and sustained such an injury as here described. Certainly here is proof of the fact of a death, and under the circumstances there is at least a probability that the death was brought about by criminal means. This certainly satisfied the rule quoted above.

Before considering the question of the voluntariness of these confessions, it might be well to dispose of defendant's objection that the court erred in failing to hear both sides of this question. Defendants' counsel suggested that the court should hear evidence from both sides ■ on the question of voluntariness of the confessions. The court said:

> The court would only determine whether there was a prima facie showing; that is the only thing the court would determine on that * * * The whole thing must go to the jury. * * * The court must determine whether it was voluntary to this extent: whether there is a prima facie showing that it was voluntary, yes * * *. The court is never going to consider the question on whether it is voluntary from the standpoint of whether it is shown from a fair preponderance of the evidence to be voluntary * * * before it goes to the jury. That would be an invasion of the province of the jury. The court is going to determine whether there is a prima facie, substantial showing that it is voluntary; and let the jurors determine whether it is or is not voluntary *as a judicial determination* of the thing. * * * I am now up to the point whether there has been a prima facie showing before the court that this statement was voluntary." (Italics ours.)

Thus the lower court announced that it would not hear and consider all the evidence on the question of voluntariness, but only that of the state to make a prima facie showing, which had already been done by the general statement

of the witness that he made no threats and offered no rewards. In other words, what had to precede defendant making his objection to the competency of the confession on the ground involuntariness, was the very thing that precluded the defendant making any showing to the court on the matter. By thus, in effect, refusing to hear the defendants' evidence on the question of whether the confession was involuntary and so incompetent, the court was in error.

Speaking of the matter of determining voluntariness of confessions, this court said in *State* v. *Johnson,* supra:

"It is for the trial judge to determine whether confessions were voluntary. If he concluded that they were, and there is conflicting evidence, he should submit the issue as to whether they were voluntary to the jury, instructing them that they should first determine that question before they consider the confessions as evidence against the accused and only consider them as evidence if they conclude that the confessions were voluntary. If the judge determines that they were not voluntary they of course should not be admitted. Likewise, if he concludes they were voluntary, and there is no evidence that they were not voluntary or the circumstances such as not to raise any doubt as to their voluntariness, he should not put the issue to the jury. State v. Bates, 25 Utah 1, 69 P. 70; State v. Johnson, 76 Utah 84, 287 P. 909; State v. Wells, 35 Utah 400, 100 P. 681, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631; State v. Dunkley, 85 Utah 546, 39 P. 2d 1097; State v. Romeo, 42 Utah 46, 128 P. 530."

It appears there was some confusion in the mind of court and counsel as to the procedure where it is sought to put a confession in evidence and question is raised as to its voluntariness. Art. 1, Sec. 12 of the State Constitution declares that no person shall be compelled ∎ to give evidence against himself. This applies to statements exacted from him outside of court as well as in court. This provision is an expression of the rule of law as it existed before the adoption of the constitution, and the basis of the rule since that time, that a confession of one accused of a public offense is inadmissible against him until and unless it is shown to have been voluntarily made or given. Since this has to do with the admissibility, the

competency, of the testimony, it presents a question of law for the court to decide. It is not a question for the jury. When the state seeks to put the confession before the jury it must establish its competency to the court. To do this it must show that the confession was given by the accused as his voluntary act; as an expression of his independent and free will, uninfluenced by fear of punishment or by hope of reward; that it was not induced or influenced by any advantages or benefits that might accrue to him or those near or dear to him, nor was it given to lighten any penalties or punishments the law might impose on him if tried and convicted without confessing; and that it was not given as a result of a desire to escape or avoid any misery, threats, acts, or conduct of any other person, having it in their power, or whom he believed had it in their power, to inflict upon him, or upon those whom it was his duty or privilege to protect. This is a basic and constitutionally guaranteed right of accused. The court will therefore hear, *all* competent evidence offered, both by the state and by the accused, as to the voluntariness of the confession, and then determine independently of the jury the competency of the evidence—that is the voluntariness of the confession—as a matter of law. This does not mean merely a prima facie showing but must satisfy the mind of the court in the light of all the evidence given by both state and defense. In laying a foundation for offering the writing, if a written confession, or the conversation, if an oral confession, the state will of course be required to show the time and place of the conversation, or the writing and signing of the instrument, and also what is generally called a prima facie showing that it was the free and voluntary act of the accused. Then when the conversation or writing is offered, is the time for the accused to make objection to its competency. When such objecton is made, the court will hear all the evidence pertaining to that question and itself determine its voluntariness as a matter of law—that is, the competency of the offered evidence. Unless the

parties stipulate to the contrary, this evidence had best be taken without the presence of the jury. This is wisdom, since if the confession is excluded, and the state has sufficient other evidence to take the case to the jury, the confession itself and all the evidence which led to its exclusion would not be proper for the consideration of the jury, and if heard by it, might well be the determining factor in reaching a verdict. If on consideration of all the evidence offered on the question, the state has not shown the confession to be voluntary, the court must exclude it. Wigmore on Evidence, 3rd Ed., Vol. III, Sec. 860. If on the other hand, the state has shown the confession was voluntary as a matter of law, the court admits it in evidence, and it is then for the consideration of the jury for what it is worth together with all the other evidence submitted to it. The court having decided the confession is competent and may be received in evidence, the state need not then further assume the burden of showing its voluntariness before the jury. The defendant may put in evidence to the jury all the facts and circumstances under which the statements were made to enable the jury to determine its credibility and the weight to be given to it. The state may also offer testimony to the jury on that matter by way of showing that the statements were freely made and therefore entitled to great weight and full credit.

The law relative to just what part the jury may play in determining whether a confession was voluntary is in an unhappy state of flux. There is no uniformity in the decision. Roughly speaking they may be placed in three classes. Some hold that the question is solely one of law for the court. States so holding are Alabama, Colorado, Illinois, Florida, Maryland, Indiana, Minnesota, Mississippi, Montana, New Jersey, North Carolina, North Dakota. The second group of jurisdictions have decisions which seem to hold that the question of voluntariness of a confession should be submitted to the jury for a determination of whether it was sufficiently voluntary for them to consider

it as evidence in making their conclusion as to his guilt. In many of these states the question has not been squarely passed upon, and what is said in the opinions is largely dicta based upon the practice in vogue. We shall examine these cases later. The states which may be placed in this group are: Arizona, Arkansas, California, District of Columbia, Georgia, Iowa, Kentucky, Michigan, Nebraska, New Mexico, New York, Pennsylvania, South Carolina, South Dakota, Texas, Utah. The third group of jurisdictions are those in which a rule or established practice cannot be determined from the decisions, because of the varied ways in which the question came before the court, and each case seems to stand on its own bottom. Such jurisdictions include the Federal Courts, District of Columbia, Kansas, Maine, Missouri, Nevada, Ohio, Oklahoma, Oregon, Rhode Island, Washington, West Virginia, Wisconsin, and Wyoming.

The differences in the decisions, however, are often more apparent than real. The decisions in the first group, which we think state the better and more practical rule are well illustrated by the case of *Brister* v. *State*, 26 Ala. 107, where the court says:

"Whenever a confession is admitted by the court, the jury must take it; they cannot reject it as incompetent; they are confined to its credibility and effect. Either party has the right to prove to the jury the same facts and circumstances which were legally proved to the court when it was called upon to decide the question of competency, and all other circumstances applicable to the confession or having any legal bearing on its credibility or effect; and if, in view of all the facts and circumstances proved, the jury entertains a reasonable doubt as to the truth of the confession, they may disregard it, in their decision of the case, as being incredible, although they cannot reject it as incompetent. * * * If they entertain no such reasonable doubt, they ought not to disregard it, although they may believe it was obtained by the appliances of hope or fear to the mind of the prisoner."

And by the words of the Colorado court in *Osborn* v. *People*, 83 Colo. 4, 262 P. 892, 901, where it is said:

"This court, on repeated occasions, has said that, to be admissible, a confession must be voluntary, and that the question of admissibility is for the court. *⁾ * * The jury, of course, is not permitted to pass upon the question of admissibility. The court having admitted the confession in evidence, it is for the jury to determine the weight to which it is entitled. The jury may accord to it great weight, little weight, or no weight at all, depending upon the circumstances surrounding the making of the confession. * * * If this is true, it follows that where the court is in doubt whether the confession was voluntary or not, the evidence may be admitted, leaving it to the jury to determine the weight to which it is entitled under all the circumstances."

And in *Hauk* v. *State*, 148 Ind. 238, 46 N. E. 127, 47 N. E. 465, 466, the court after a careful consideration of the question said:

"When the court holds the confession admissible as evidence, it must be received by the jury, and it is not within their province to reject it as incompetent. The credibility, effect, or weight to which it is entitled, as in other evidence, is a question which the jury has the right and must determine for themselves. In deciding this question, they may and ought to look to and consider all of the facts and circumstances under which the alleged confession was made. The credibility of the confession being a legitimate subject of inquiry upon the part of the jury, it may be impeached by the defendant in any authorized manner. While the jury may believe it to have been involuntarily made by reason of the hopes or fears of the confessor having been unduly excited, still, if there is evidence which confirms or corroborates it, so as to impress the jury with the belief of its truth to their satisfaction, in that event they would not be justified in rejecting the confession solely upon the ground that they believed it to have been involuntarily made."

In *McCleary* v. *State*, 122 Md. 394, 89 A, 1100, 1102, the Maryland court says:

"It is the fundamental duty of the court in all cases to pass upon the admissibility of evidence. A confession alone constitutes no crime; it is only evidence tending to show that a crime has been committed, and it may or may not be believed by the jury, or by the court sitting as a jury, in any particular case; but the admissibility of it as evidence to be submitted to the jury is distinctly, under the system of law prevailing with us, a question for the court."

We now turn to the cases in the second group. The practice there is best expressed by the courts of California and of Massachusetts. In *People* v. *Black*, 73 Cal. App. 13, 238 P. 374, 376, the court said:

"Before we exhibit the state of the record upon this situation, it may be well to state the rule which regulates the respective functions of judge and jury when the question of the admissibility of a confession arises in a criminal case. The judge must determine, first, and as a matter of course, whether the confession was free and voluntary, and whether, therefore, it is to be heard by the jury. Notwithstanding, however, the settlement of this question, which is merely preliminary, and which bears solely upon the matter of the admissibility of the confession, as already indicated, there is yet a function to be exercised by the jury concerning it. In allowing the confession to go to the jury, the judge has ruled, it is true, that it was freely and voluntarily made, but the ruling in no way binds the jury. That body, now considering the matter substantively, may disregard the view of the judge made evident by his permitting the confession to be heard, and may, as the trier of all final questions of fact in the case, conclude that the confession was not free and voluntary, and may therefore refuse to consider it."

The Massachusetts court in *Com.* v. *Knapp*, 10 Pick. 477, 20 Am. Dec. 534, succinctly stated:

"Although the jury have the power, and it is their duty to decide all points of law which are involved in the general question of the guilt or innocense of the prisoner, yet when questions of law arise in the arraignment of the prisoner, or in the progress of the trial, in relation to the admissibility of evidence, they must be decided by the Court, and may not afterwards be reviewed by the jury. * * * If the court reject the testimony, the jury have no means of receiving it against the opinion of the court. So if the evidence is admitted by the court, the jury must take it. They cannot reject it as incompetent. They are confined to its credibility and effect. In weighing the evidence, the jury will examine and consider the manner in which it was obtained, and was given, as well as all the circumstances applicable to it; and if, in view of all the facts and circumstances proved, it is, in their opinion, unworthy of credit, they will disregard it in their decision of the case, as being incredible, although they cannot reject it as incompetent."

While a few states, notably Pennsylvania, Kentucky and Georgia, apparently hold that the court makes only a pre-

liminary or casual investigation of the voluntariness of the confession, usually by the statement of the witness to whom the confession was made, and if he testifies that the confession was voluntary, and not induced by threats or promises, the confession must be received and its competency left to the jury, the general rule of the decisions of the states in group 2 is that stated by the California and Massachusetts courts quoted above. And that line of decisions does not really conflict with the rule in the jurisdictions in group 1. All courts agree that the court first passes on the question of voluntariness in determining the competency of the evidence; all agree that if the court receives the confession, both the defendant and the state may give to the jury their evidence as to the facts and circumstances under which the confession was made to enable the jury to pass upon the credibility and weight to be given to the confession. The only differences seem to be as to the extent of the court's investigation as to the confession being voluntary, and as to the nature of the instruction to be given the jury regardnig the confession if received in evidence. If this be kept in mind, an examination of the cases will be much simpler. All the states in group 1 above hold the court should make a complete investigation and hear all the evidence on the question as to whether the confession was voluntary. This is also the rule in the following states from group 2: Arizona *(Indian Fred* v. *State,* 36 Ariz. 48, 282 P. 930) ; Arkansas *(Davis* v. *State,* 182 Ark. 123, 30 S. W. 2d 830) ; California *(Black case,* supra) ; Dist. of Columbia; Iowa *(State* v. *Storms,* 113 Iowa 385, 85 N. W. 610, 86 Am. St. Rep. 380) ; Massachusetts (case supra) ; New Mexico *(State* v. *Vaisa,* 28 N. M. 414, 213 P. 1038) ; New York *(People* v. *Doran,* 246 N. Y. 409, 159 N. E. 379) ; Texas *(Sparks* v. *State,* 34 Tex. Cr. R. 86, 29 S. W. 264).

This court in *State* v. *Wells,* 35 Utah 400, 100 P. 681, 683, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631, held that when objection is made to the admission of a confession in evidence

the state must first offer some evidence to show that the confession was voluntary; that

"Before the court rules upon the question, the privilege should be given the defendant, if he requests it, to cross-examine the witness, or witnesses, * * * that when the state has made such prima facie showing, one which primarily tends to show that the confession was voluntary, the defendant may not, as matter of right, and before the confession itself is admitted, then offer evidence to dispute or contradict the preliminary testimony offered, but may do so afterwards."

The last clause in the statement quoted is against the overwhelming weight of authority, and is hereby disapproved and overruled. We hold that the defendant, as a matter of right, may give all evidence he has before the court, pertaining to the voluntariness of a confession before the confession is received in evidence; and that the court must base its ruling on the competency of the confession as evidence upon all the testimony on the question adduced by both state and the defendant. If on a consideration of all the evidence on the matter the court does not find the confession to be voluntary it should be excluded as incompetent. To hold otherwise does violence to the constitutional provision that an accused may not be compelled to give evidence against himself.

If then the court admits a confession in evidence, what are the rights of the defendant and the jury with respect to it? We have already held that defendant may put before the jury all his evidence reflecting on the credibility and weight of the confession as evidence, and the state may offer evidence to contradict that of defendant.

In deliberating on a verdict the jury considers all the evidence submitted to it as it bears upon the question to be decided. Conflicts must be reconciled by the jury, or it (the jury) must decide which it believes. It must also determine what weight it ascribes or gives to the various items of evidence. Since a defendant cannot be compelled to give evidence against himself either in or out of court—

that is, since the jury can only consider statements of defendant which are his voluntary and free will act, the jury must of necessity, as to any statements attributed to him, determine if they were free and voluntary, for testimony otherwise obtained from accused is entitled to no credence in law. When there is a conflict in the evidence as to how a confession was given, the court advises the jury that evidence of the accused, involuntarily given, is as a matter of law entitled to no credence. Or as generally put in the decisions, the court instructs the jury that if any confessing statements attributed to accused were not his free and voluntary utterances they should disregard them, which is simply the same as saying that as a matter of law it is entitled to no weight or credence. This is the real substance of nearly all the decisions which say that the jury ultimately determines the question of the voluntariness of the confession. It is closely akin to the standard stock instruction that if the jury believe that a witness has knowingly testified falsely on any material matter they may disbelieve all his testimony. Thus the voluntariness of the confession as a matter of law is solely for the determination of the court; that is to say, the court is the sole judge of the question as to whether the confession was obtained in a way the law does not sanction; whether things were done to obtain a confession which render it incompetent as not the result of a free and untrammelled will, as a matter of law. Was it obtained in such a way that the law suppresses it as the result of taking an unfair, an unconstitutional advantage of the accused? That is the problem of the court. It may well be that although it was not obtained under such conditions that the law will suppress it, yet it may have been obtained under such conditions that as a substantive matter the accused may have been led, caused or induced to make statements or admit facts against himself, not the result of his own free will or choice, but by the suggestions, veiled implications, or conduct of others in a position of apparent advantage. Did it emanate from the desire

of the accused to tell the truth or from other motives induced by the actions, words, or circumstances created by others who are in an apparent position of advantage to help or hinder? If the jury thinks it so obtained they may give it no credence or weight whatever. See Greenleaf, 16th Ed., Vol. 1, p. 355, 356; Wigmore, 3rd Ed., Vol. III, pp. 349, 350 and cases cited. This becomes a question of fact for the jury, and they may be told to disregard it as unworthy of belief if they find it was so obtained. There is then no conflict between the function of the court and jury.

To the extent that anything in the cases of *State* v. *Bates*, 25 Utah 1, 69 P. 70; *State* v. *Wells*, 35 Utah 400, 100 P. 681, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631; *State* v. *Romeo*, 42 Utah 46, 128 P. 530; *State* v. *Johnson*, 76 Utah 84, 287 P. 909; *State* v. *Dunkley*, 85 Utah 546, 39 P. 2d 1097; and *State* v. *Johnson*, 95 Utah 572, 83 P. 2d 1010, is in conflict with the views herein expressed, those cases are disapproved and overruled.

After the purported confessions were received in evidence, the court permitted defendants to make proof by cross-examination of state witnesses and by testimony of defendants as to how the purported confessions were obtained. Defendants then moved to strike the testimony of the confessions because it was not clear beyond travail that the confessions were not voluntary. The denial of this motion is assigned as error.

On the question of when a confession is voluntary, there is much authority. The United States Supreme Court passed on the matter in *Bram* v. *United States*, 168 U. S. 532, 533, 18 S. Ct. 183, 192, 42 L. Ed. 568, where the court reviewed both English and American decisions on the subject. It is there said:

"* * * While all the decided cases necessarily rest upon the state of facts which the cases considered, nevertheless the decisions as a whole afford a safe guide by which to ascertain whether in this case the confession was voluntary, since the facts here presented are strikingly like those considered in many of the English cases."

Going on, the court reviews American authorities:

"In the following cases the language in each mentioned was held to be an inducement sufficient to exclude a confession or statement made in consequence thereof: In Kelly v. State (1882) 72 Ala. 244, saying to the prisoner: 'You have got your foot in it, and somebody else was with you. Now, if you did break open the door, the best thing you can do is to tell all about it, and to tell who was with you, and to tell the truth, the whole truth, and nothing but the truth.' In People v. Barrie, 49 Cal. 342, saying to the accused: 'It will be better for you to make a full disclosure,' In People v. Thompson (1890) 84 Cal. 598, 605, 24 P. 384, 386, saying to the accused: 'I don't think the truth will hurt anybody. It will be better for you to come out and tell all you know about it, if you feel that way.' In Beery v. United States (1893) 2 Colo. 186, 188, 203, advising the prisoner to make full restitution, and saying: 'If you do so, it will go easy with you. It will be better for you to confess. The door of mercy is open, and that of justice closed;' and threatening to arrest the accused and expose his family if he did not confess. In State v. Bostick (1845) 4 Har., Del., 563, saying to one suspected of crime: 'The suspicion is general against you, and you had as well tell all about it. The prosecution will be no greater. I don't expect to do anything with you: I am going to send you home to your mother.' In Green v. State (1891) 88 Ga. 516, 15 S. E. 10 [30 Am. St. Rep. 167] saying to the accused: 'Edmund, if you know anything, it may be best for you to tell it;' or, 'Edmund, if you know anything, go and tell it, and it may be best for you.' In Rector v. Commonwealth (1882) 80 Ky. 468, saying to the prisoner in a case of larceny: 'It will go better with you to tell where the money is. All I want is my money, and if you will tell me where it is, I will not prosecute you hard.' In Biscoe v. State (1887) 67 Md. 6, 8 A. 571, saying to the accused: 'It will be better for you to tell the truth, and have no more trouble about it.' In Com. v. Nott (1883) 135 Mass. 269, saying to the accused: 'You had better own up. I was in the place when you took it. We have got you down fine. This is not the first you have taken. We have got other things against you nearly as good as this.' In Com. v. Myers (1894) 160 Mass. 530, 36 N. E. 481, saying to the accused: 'You had better tell the truth.' In People v. Wolcott (1883) 51 Mich. 612, 17 N. W. 78, saying to the accused: 'It will be better for you to confess.' In Territory v. Underwood (1888) 8 Mont. 131, 19 P. 398, saying to the prisoner that it would be better to tell the prosecuting witness all about it, and that the officer thought the prosecuting witness would withdraw the prosecution, or make it as light as possible. In State v. York (1858) 37 N. H. 175, saying to one under arrest immediately before a confession: 'If you are guilty,

you 'had better own it.' In People v. Phillips (1870) 42 N. Y. 200, saying to the prisoner: 'The best you can do is to own up. It will be better for you.' In State v. Whitfield (1874) 70 N. C. 356, saying to the accused: 'I believe you are guilty. If you are, you had better say so. If you are not, you had better say that.' In State v. Drake (1893) 113 N. C. 624, 18 S. E. 166, saying to the prisoner: 'If you are guilty, I would advise you to make an honest confession. It might be easier for you. It is plain against you.' In Vaughan v. Com. (1867) 17 Gratt., Va., 576, saying to the accused: 'You had as well tell all about it.' "

The court then went on to determine that in the instant case when the police officer had the prisoner brought to his office, stripped him of his clothes, and then questioned him, not using any promises or threats, but merely confronting him with the statement of an alleged witness to the murder, this was sufficient, considering all of the facts together, to render the statements inadmissible. The court also considered the statement of the officer that "if you had an accomplice, you should say so, and not have the blame of this horrible crime on your own shoulders," and came to the conclusion that this would engender in the mind of the prisoner some hope of reward for confessing. In *State* v. *Wickman,* 39 N. M. 198, 43 P. 2d 933, 936, the prisoner was confined in jail for three or four days, and subjected to persistent and long continued questioning, and not allowed to get his normal sleep. Officers made the following statements, in an effort to secure a confession: "It would be to his best interests to tell the truth" and "I don't know what will happen to you, but the best thing for you to do is to tell the truth." They also said "that if he would tell the truth about the whole thing, how it happened, he would feel better about it" and "that he would feel better if he got this off his mind."

In deciding the question of voluntariness, the court said, on the above facts:

"Appellant is an intelligent, educated man. To such a mind, these adjurations carry no reasonable implication that leniency can or

will be shown. After having confessed, he said that it was good to have it over, and admitted that he had been promised nothing. We consider that the state had sustained the burden of establishing the voluntary character of the confession. We are not saying that the judge may measure the influence of a promise made. We say that it was within his province to say in this case that no promise was made."

The court then goes on to distinguish this case from *State* v. *Dena,* 28 N. M. 479, 214 P. 583, 584, where two Indians, ignorant and unable to speak English, had confessed. It was there shown that the deputy sheriff had assured them they would not be hurt if they confessed, and that it would be better for them to tell the truth. In the Dena case the court had said:

"In this case we have this advice on the part of such officer, coupled with the further fact that he told and assured these appellants, who are shown to be Indians, unable to speak the English language, and who doubtless in this helpless condition relied largely upon such officer and his advice and assurance, that they would not be hurt. These two things together, we think, are sufficient to render the confessions made immediately thereafter involuntary.  *  *  * When such promises are shown, the law cannot measure the force of the influence thereby produced; neither can the courts determine in what degree they affected the mind of the accused and to what extent they entered into his decision to confess. Hence the rule is established that, when it is shown such promises, either express or implied, are so made by persons in authority, confessions which are made pursuant thereto must be excluded."

The New Mexico court distinguishes the two cases by the statement, "appellant is an intelligent, educated man" which it makes in the Wickman case. In other words, the court holds that in the case of an uneducated person it will more easily infer some promise of leniency which would influence the mind of the accused to confess, than in the case of an educated man. Thus, while the court may not weigh the effect of such a promise, it may consider all of the circumstances of the case to determine whether to infer such a promise.

In *People* v. *Day*, 125 Cal. App. 106, 13 P. 2d 855, the accused was not arrested, but was taken from her home and confined in a hotel for about 10 days during which time, she was permitted some freedom of movement, but always accompanied by some officers. In addition to this, she was questioned frequently by officials from the District Attorney's office, and veiled threats of sending her to a Federal penitentiary were made. The court held a confession obtained under such circumstances inadmissible.

The Wyoming court in *Maki* v. *State*, 18 Wyo. 481, 112 P. 334, 335, 33 L. R. A. N. S., 465, was considering whether testimony given by the accused at an inquest was admissible as being a voluntary confession, and gave the following definition:

"A statement, to have been voluntarily made, must proceed from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous, disturbing cause."

Going on, the court quotes 1 Greenleaf on Evidence, 225:

"The manner of the examination is therefore particularly regarded; and if it appears that the prisoner had not been left wholly free, and did not consider himself to be so in what he was called upon to say, or did not feel himself at liberty to wholly decline any explanation or declaration whatever, the examination is not held to have been voluntary."

In *People* v. *Thompson*, 84 Cal. 598, 24 P. 384, 386, the defendant, a boy of about 18, confessed to the sheriff. The court said:

"The defendant was about 18 years of age, and had evidently heard of some persons accused of crime who had gotten off by confessing, and, imbued with this notion, he sought an interview with the officer, and after ascertaining that his impression, to a certain extent, was true, inquired of the sheriff whether it would be better for him to make a statement of the facts, and the sheriff replied: 'I told him that I didn't think the truth would hurt anybody. It would be better for him to come out and tell all he knew about it if he felt that way.' "

Under this fact situation, the court held the confession not voluntary, and therefore inadmissible. Again passing on the question in *People* v. *Gonzales,* 136 Cal. 666, 69 P. 487, 488, the California court said:

"It scarcely needs reasoning to show that a statement extorted as was this one is not the free, voluntary statement which the law contemplates shall alone be admissible. Cota [the defendant] had been kept in solitary confinement, had been without the aid or advice of counsel, and had been daily importuned to speak the truth; being told that the evidence in the hands of the peace officer inculpated him, and that his denial of complicity in the crime was false. He was assured by the sheriff that if he spoke the truth the sheriff would do whatever he could for him, and was told 'that he had better come out and tell the truth.' That inducements and promises were thus held out, sufficient to destroy the voluntary nature of the statement, admits of no doubt; and the statement, amounting to an admission or confession of guilt, was therefore clearly inadmissible."

In *State* v. *Andrews,* 35 Or. 388, 58 P. 765, 766, defendant testified at a preliminary examination, without having been warned that what he said might be used against him, and advised that he need not testify. The court said:

"But such statements were equivalent to testimony extorted from him when a prisoner at his preliminary examination. His situation rendered what he might then say concerning his guilt in the nature of a confession, and, there being no evidence that he was advised of his rights, or cautioned that any statement he should make might be urged against him in his subsequent trial, such confession was not voluntarily made, and the court erred in admitting it in evidence," citing cases.

*People* v. *Borello,* 161 Cal. 367, 119 P. 500, 505, 37 L. R. A., N. S., 434, is an instance of extended questioning on the part of the officers, together with false statements, profanity, and threats to expose the defendant's brother to prosecution. In holding that the confession was not voluntarily obtained, and should have been excluded, the court said:

"While, upon the preliminary showing made by the prosecution and upon which the admission of the confession was made, it ap-

peared in answers to general questions that the confession had been obtained freely and voluntarily, the uncontradicted testimony of the stenographer showed exactly how it was obtained and by what method and conduct on the part of those who had testified to its free and voluntary character, and conclusively showed that is was not so made, but was obtained by a method inquisitorial in its nature and of the 'third degree' character; the assumption of a dominating and brow-beating attitude of the officers toward the defendant, and the employment of deceptions, threats, and intimidations, emphasized with coarse profanity."

In a case of long protracted questioning of a Chinese, in the absence of an interpreter, friends or counsel, *People* v. *Quan Gim Gow,* 23 Cal. App. 507, 138 P. 918, 919, the court said:

"While no physical force was used, and neither threats nor promises made, there can be no doubt at all but that the repeated questioning of the officers, like the constant dropping of water upon a rock, finally wore through his mental resolution of silence. Admittedly, his refusal at first to answer incriminating questions gave evidence of a desire to make no statement. When, then, did this unwillingness vanish and a desire to talk succeed it? Not after he had been given any period of time for reflection; for his inquisitors allowed him none. The examination was persisted in until a response was forthcoming, and, under these circumstances, it must be said that the responses appear to have been unwillingly made and as a direct result of continued importuning. * * * The fact that the questioning was done by police officers presents an important item for consideration in determining whether the admissions extracted were of a voluntary character."

This court passed on the question of voluntariness in *State* v. *Assenberg,* 66 Utah 573, 244 P. 1027, where defendant, a young man of 19 was taken by the deputy sheriff before a coroner's jury, and testified without being cautioned as to his right to refuse to answer, or as to his right to counsel. The court held that testimony given under such circumstances would not later be admitted as a confession on the ground that it was not voluntary. In *State* v. *Johnson,* 95 Utah 572, 83 P. 2d 1010, 1013, the court considered the matter of voluntariness, and said:

"In determining whether a confession was voluntary there must be taken into consideration the age and intelligence of the witness, the place and conditions under which the statement was made, the circumstances that invoked the conversation, as well as the nature, content, and import of the statement itself. * * * We think the trial court is in a better position to determine whether advantage was taken of a defendant to obtain a confession in a way not countenanced by the law * * *."

With this last in mind, we narrate the circumstances under which the defendants herein gave the alleged confessions. They were both under arrest, charged with obstructing or interfering with officers, or with violation of the grazing laws. Crank was arrested on July 30, and it was not until September 24, that he gave the alleged confession. During that time, he had been held on a supposedly minor charge, without trial or hearing, and without the aid or advice of counsel, though nothing appears that he was refused any help to secure counsel, or that he requested counsel. Chief was arrested on September 27, and gave his confession the same day. Admittedly, his arrest was somewhat of a struggle, and he was injured, though the extent of injuries is disputed. Both defendants were ignorant, uneducated, and unable to speak the English language. They considered the white men their superiors, and looked to them, and especially Ashcroft, an Indian Service agent, to help them out of the difficulty in which they found themselves. Ashcroft made the statement that he knew more than the defendants thought he did about the matter, and he had the names of the people who had told him about it down in his book, but could not remember them. In both instances the questioning continued for several hours.

It is contended that under these circumstances we should hold the alleged confessions to have been involuntary as a matter of law. But on appeal in criminal cases, we only review the record made below. The trial court did not pass upon this question, and was not asked to pass upon it. It therefore is not properly before us

for a ruling. The district court, as indicated, supra, took the view such question was for the jury. Had it heard all the evidence it should have heard before passing on the voluntariness of the confessions, we cannot say what its ruling would have been, nor that such ruling would be error. As stated in the Johnson Case, supra, the trial court, hearing and seeing the witnesses, generally has some advantages over a reviewing court in weighing the evidence. Until the district court has considered and passed upon the question, we do not deem it here for review.

However, the state did not introduce the first confessions of either of the defendants, but introduced the second confessions, the first ones not having been reduced to writing. There is the question of whether the involuntariness of the first confession may be carried over so as to taint subsequent confessions, given under situations which have not substantially changed.

While there is some division in the cases as to the proper rule of law, we believe that the doctrine laid down in *Williams* v. *State*, 88 Tex. Cr. R. 87, 225 S. W. 177, 179, to be the better rule. The court there said, quoting from *Walker* v. *State*, 7 Tex. App. 245, 32 Am. Rep. 595:

" 'Although no unbending, universal rule can be laid down by which to determine whether subsequent confessions in a criminal case are admissible, when the former confessions were obtained by improper influences, yet in each case the inquiry must be whether, considering the degree of intelligence of the prisoner, and all the attendant circumstances, it is affirmatively shown that the effect of the primary improper inducement was so entirely obliterated from his mind that the subsequent confession could not have been in the slightest degree influenced by it; and if there be any doubt on this question, it must be resolved in favor of the prisoner, and the confession must be excluded.' "

The same rule is laid down in *People* v. *Sweetin*, 325 Ill. 245, 156 N. E. 354, 356, where the court said:

"Where an original confession is involuntary or secured by improper means, subsequent confessions of the same crime, though made to persons other than those to whom the original was made,

are inadmissible as evidence, unless it appears that from lapse of time, or otherwise, the influence which induced the original confession had been removed and the party confessing was no longer dominated by such influence." Citing cases.

To the same effect, see *Flamme* v. *State*, 171 Wis. 501, 177 N. W. 596; *Lang* v. *State*, 178 Wis. 114, 189 N. W. 558, 24 A. L. R. 690; and *Fisher* v. *State*, 145 Miss. 116, 110 So. 361.

In the instant case, the conditions of the defendants had not substantially changed at the time the second or following confessions were given. They were still in custody, still without aid of friends or counsel, ignorant and uneducated, and it appears from the record, were not sure what the whole proceeding was about, or what it might result in. Under these circumstances, it is inevitable and self-apparent that the first confession would influence the defendants in giving a second confession, tainting that confession, and rendering it, likewise inadmissible if the first ones were involuntary.

As this case must be reversed and sent back for a new trial, we shall consider briefly other matters, for the guidance of the lower court.

In this state, it is exclusively in the province of the jury to pass upon the evidence, and the court may not make any comment thereon. *State* v. *Green*, 78 Utah 580, 6 P. 2d 177. Therefore, it was error for the trial court to state.

"The court has reached the conclusion that that particular conversation is corroborated by the facts and circumstances as shown * * * which tends to establish the corpus delicti." Tr. 468.

Complaint is made of the court's Instruction No. 3, given to the jury. By Instruction No. 2 the jury were told that the charge of murder in the first degree included within it a charge of murder in the second degree and also charged the crime of manslaughter; and then in order defined: murder in the first degree, murder in

the second degree, voluntary manslaughter, and involuntary manslaughter. In Instruction No. 3 the court set out the elements the state must prove to justify a verdict of murder in the first degree, and also of murder in the second degree, and then said:

"You cannot find the defendants guilty of either voluntary or involuntary manslaughter, even though your minds might be satisfied beyond a reasonable doubt that one of these crimes has been committed by the defendants, because the proof adduced conclusively shows that the slaying of a human being whose skull has been received in evidence in this cause occurred more than four years prior to the time that the prosecution was commenced. It is the law of this state that a prosecution for any felony other than murder * * * must be commenced by the filing of a complaint or information within four years after its commission. If therefore, the state has not proved to your satisfaction beyond all reasonable doubt each and every one of the elements of murder in the first degree, or each and every one of the elements of murder in the second degree, it is your duty to find the defendants not guilty."

It is argued that the court should have permitted the jury to find that the offense, if any, was manslaughter, and return a verdict accordingly, even though upon such verdict no penalty could be imposed, and the defendants would be entitled to a discharge. The substance of the contention is that since Sec. 105-34-5, U. C. A. 1943, provides as follows:

"Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty,"

the court cannot impinge upon the province of the jury, but must leave them free to determine the degree of crime committed. The fact that the statute of limitations has run against one degree of the crime does not make that conduct any the less criminal, but merely erects a bar to prosecution for it, so that it would not be material, as far as the jury is concerned, that in this case the statute of limitations had run against the crime of manslaughter. There is sufficient evidence in the record to have justified

the jury in arriving at a verdict of manslaughter, and therefore the defendants were entitled to an instruction on this crime. By its instruction, the court said in effect, "you must find the defendants guilty of murder, or innocent of any crime," not because the evidence is all that way, but because of limitations running. The jury might well feel that the defendants' conduct was criminal, and under the instruction given, they would then be compelled to convict of murder in the second degree. True, had a verdict of manslaughter been returned, the court would have had to dismiss the case because prosecution was barred by the statute of limitations, but the matter of the punishment for the various degrees of the crime is within the province of the court, and not the jury. Therefore, the instruction that the statute had run against prosecution for manslaughter, and they could not find that crime had been committed was improper.

While the argument sounds well, it cannot prevail. The statute of limitations is not a mere limitation on penalty, but is a bar to prosecution. Sec. 105-9-1, 2, 3, U. C. A. 1943. A complaint or information which shows on its face that the statute of limitations had run, should be quashed. Sec. 105-21-10, U. C. A. 1943. A prosecution for such offense cannot be validly inaugurated nor maintained. Defendant has a right to insist that a complaint or information in as far as it charges an offense barred by limitations be quashed. The state is not permitted to prosecute a man, put him on, and to the expense of, his defense, nor have a verdict adjudging one a felon when the statute of limitations has run. The statute runs against the filing of such complaint or information; against the attempt to prosecute. It says in effect, that as far as such offense is concerned, a man may not in law be considered as having committed it; he may not, within the spirit of the law be properly accused thereof or charged therewith. The trial court was right in its position that the jury could not return a verdict of guilty of manslaughter because defendants

could not be prosecuted or tried for such offense. And for this reason the court was in error in giving any instruction with regard to manslaughter. Instruction No. 2 was error, in this case, in stating that the charge of murder in the first degree had involved in it a charge of manslaughter. Such offense being barred by limitation, should be considered as quashed out of the information. In a case like this one, it is not embraced within the charge. Instruction No. 3 was therefore error in the part quoted supra about that charge being barred by limitations. The references made to manslaughter in these two instructions might well have the effect with the jury contended for in defendants' argument, supra. The trial court should have submitted the matter on instructions governing murder in the first degree, or murder in the second degree, or acquittal, without any reference to the statute of limitations or offenses barred thereby.

Defendants complain of misconduct of the jury, in that Juror Dan Hayes was in conversation with the witness Ashcroft, immediately prior to the submission of the case to the jury. It is stated in the affidavit of Juror Hayes that he was merely renewing an old friendship with the witness.

In *State* v. *Anderson*, 65 Utah 415, 237 P. 941, 943, this court was dealing with a similar case, where the prosecuting witness gave the juror a ride to his home and back, every day during the progress of the trial. The court said:

"The authorities, however, all agree that any conduct or relationship between a juror and a party to an action during trial that would or might consciously or unconsciously, tend to influence the judgment of the juror authorizes and requires the granting of a new trial, unless it is made to appear affirmatively that the judgment of the juror was in no way affected by such relationship, or that the parties by their conduct waived their right to make objection to such conduct * * *. But it should also be remembered that, when a juror is selected by reason of his impartiality to determine not only the property rights between individuals, but in criminal cases the personal liberty of individuals charged with offenses, the law requires of the juror such conduct during that time that his verdict may be

above suspicion as to its having been influenced by any conduct on his part during the trial  *  *  *."

The court then reviews authorities in accord.

In the case at bar, Ashcroft, too, was the prosecuting witness, and had taken a prominent part in the trial of the case. It was in fact, apparently, his job to enforce the law on the Reservation, and this trial was a part of that job. The conversation in question took place, as alleged in the counter affidavits, in open court, almost within hearing of the defendants and their counsel, and affidavits of both the juror and the witness are to the effect that they were not discussing the case, but merely talking in a friendly fashion. In spite of these extenuating circumstances, this conduct is certainly improper, and is to be condemned by the court, particularly in capital cases, where the life or liberty of the defendant is at stake. In such instances, the verdict of the jury, like Caesar's wife, *must be above suspicion.* In the instant case, since a new trial must be granted on other grounds, we need not determine whether such conduct would alone be grounds for a new trial.

The judgment is reversed and the cause remanded for a new trial.

MOFFAT, J., concurs in the result.

WADE, Justice:

Originally the CHIEF JUSTICE, Mr. Justice McDONOUGH and myself each wrote separate concurring opinions, each covering in general all the propositions discussed in the main opinion, but each discussing questions not discussed by the others. On request, in order to eliminate overlappings, I am writing this opinion embodying the ideas of those three tentative opinions and to some extent the words of the other justices. While generally we agree with the result reached by Mr. Justice LARSON in the main opinion, we have doubts as to some of the things said there-

in and are therefore limiting this concurrence to views herein expressed.

.We concur in the holding that the information stated a public offense.

We concur in the conclusion that failure to provide counsel at the preliminary hearing and failure of the defendants to specify that they waived counsel did not vitiate the preliminary hearing. We have some doubt as to some of the statements made in the opinion under heading II but having given our conclusion we need not discuss the reasoning of those statements. We must not lose sight of the fact that a preliminary hearing is what it purports to be—a hearing to determine whether there is reasonable cause to believe that a crime has been committed and that the defendants committed it. It is not a technical proceeding. Certain constitutional rights of the accused must be observed but the hearing may be informal and we are by no means certain that hearsay evidence is inadmissible. The proceeding is an inquiry—not a trial. In Federal Grand Jury proceedings the accused is not even present and hearsay evidence which appears to throw light on the inquiry is admitted. There is no one to gainsay its admission. While the procedure before a magistrate is more strict, the defendant being present—especially in regard to the matter of safeguarding his rights usually best done by attorney representation—so he may not be made to incriminate himself—the proceedings still take on the form of an inquiry under safeguards and not a trial. We seem to sense in our decisions a growing tendency to apply to preliminary hearings more and more of the formality and requisites of a trial. We only wish here to sound a note of warning. We agree that in this case we need not decide whether if Ashcroft himself had not testified there would have been sufficient competent evidence to bring over or invoke the jurisdiction of the District Court. That is largely in the discretion of the magistrate. Nor do we consider it necessary in this case to lay

down any rules in reference to the admission of hearsay evidence in a preliminary hearing.

We concur in the conclusion that there was evidence independent of the confession of the corpus delicti. There is no rule that such evidence cannot be admitted because the confession leads to its discovery. To borrow the words of Mr. Justice Wolfe in his dissening opinion in *State* v. *Johnson,* 95 Utah 572, at page 589, 83 P. 2d 1010, at page 1018:

"The procedure is not to look at the confession and then at the independent evidence of corpus delicti to see if it is corroborated, by the latter, but to put one's hand over the confession as if it had never been introduced and see if there is independent evidence of the two elements of the corpus delicti."

We agree that the trial court erred in receiving in evidence the defendants' confessions upon the State merely making a prima facie showing that such confessions were voluntary, without first hearing all of the evidence of both sides on that question and determining therefrom whether such confessions were in fact voluntarily made. The decision of the trial court was no doubt made in reliance on statements made in *State* v. *Wells,* 35 Utah 400, 100 P. 681, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631, quoted from in the main opinion and which has been cited with approval in *State* v. *Johnson,* 76 Utah 84, 287 P. 909; *State* v. *Dunkley,* 85 Utah 546, 39 P. 2d 1097; *State* v. *Johnson,* 95 Utah 572, 83 P. 2d 1010; *State* v. *Masato Karumai,* 101 Utah 592, 126 P. 2d 1047. It was not necessary in any of those cases for the court to decide this question and what the court therein said on this question was clearly dicta.

By disapproving what is said on this question in the case of *State* v. *Wells,* supra, doubt is cast on a number of other propositions which for the guidance of the court in the new trial should be here definitely decided. From the decision that the court must, where the question of the voluntariness of a confession is raised, first determine from

all the evidence of both sides thereon, whether the confession is voluntarily made, we have presented two further questions: (1) Does the State have the burden of persuadin the court that the confession was voluntary, or does the defendant have the burden of persuading the court that it was involuntary? (2) What is the function of the jury in determining whether the confession was voluntary, and the weight and credit to be given thereto?

Taking these questions up in the order above stated, we agree with the main opinion that: "If on a consideration of all of the evidence on the matter the court does not find the confession to be voluntary it should be ■ excluded." Thus the State has the burden of persuading the court that the confession was voluntary by a preponderance of all of the evidence on that question. An examination of the authorities discloses that there are many different views on this subject. Wharton's Criminal Evidence, 11th Ed., Vol. 2, p. 986, Sec. 595, states:

"Most authorities and jurisdictions have asserted the rule that a confession sought to be introduced into evidence is presumed to be voluntary. This is equivalent to statements made by some courts that the confession is prima facie admissible."

In Wigmore on Evidence, 3rd Ed., Vol. 3, Sec. 860, it is stated that five distinguishable attitudes are found represented in the rulings in regard to this matter. They are listed as follows:

"(1)   The original English rule was that the prosecution (offering the confession) must show that it was made voluntarily, i.e., without any improper inducement from the person receiving the confession; and this rule is accepted in most American jurisdictions.

"(2)   The English judges occasionally went still further, with a rule that where the accused had been in charge of a person in authority other than the one to whom the confession was made, the prosecution must show the absence of an inducement from the former as well as from the latter.

"(3)   The view has also found representatives that the prosecution must, not merely in the above circumstances, but in all cases, show the absence of an inducement for any one else and not merely

from the person receiving the confession. This is an absurd extreme.

"(4)   A few jurisdictions regard the confession as 'prima facie' admissible, and require the defendant to show that the alleged improper inducement existed. This is the practical and natural rule; for if there is any reason to object to the confession, no one can know it better than the defendant. * * * Of course, he should be admitted to testify to this question of fact preliminary to the court's ruling, without waiving his privilege.

"(5)   A modern English ruling takes a middle path, and seems to receive the confession unless attacked by evidence of an improper inducement and then in case of doubt leaves upon the prosecution the burden of convincing the court of the admissibility."

It is our opinion that paragraph (5) of the above quotation from Dean Wigmore's Evidence states the better rule.

The trial court having decided from the evidence that the confession was voluntarily made, the appellate court will not disturb that finding in the absence of an abuse of its discretion where there is substantial evidence from which it could reasonably so find.   See Wigmore on Evidence, Third Ed., Vol. III, Sec. 862; *Osborn* v. *People,* 83 Colo. 4, 262 P. 892; *Mangum* v. *United States,* 9 Cir., 289 F. 213; *State* v. *Gorham,* 67 Vt. 365, 31 A. 845; *State* v. *Cross,* 72 Conn. 722, 46 A. 148.   The case of *State* v. *Wells,* supra, and other cases above cited as approving it, also hold to this doctrine, although they do not require the trial court to decide the question of voluntariness of the confession but only to require a prima facie showing that it was voluntary.   Our decision in this case is not contrary to this rule because here the trial court refused to determine the question of whether the confession was voluntary and only determined that the State had made a prima facie showing to that effect.   The defendants were entitled to have the confessions excluded unless the court was convinced by a preponderance of the evidence that it was voluntary.

What is the function of the jury in determining whether the confession was voluntary, and the weight

and credit to be given to it? In *State* v. *Wells,* supra [35 Utah 400, 100 P. 683, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631], we said:

"* * * when the evidence is conflicting or is open to different inferences, the question of voluntariness should be left to the determination of the jury, like every other question of fact, under instruction to wholly disregard the evidence of the confession, unless the jury are convinced and find, upon all the evidence adduced, that it was voluntary."

To the same effect are *State* v. *Bates,* 25 Utah 1, 69 P. 70; *State* v. *Johnson,* 76 Utah 84, 287 P. 909; *State* v. *Dunkley,* 85 Utah 546, 39 P. 2d 1097; *State* v. *Johnson,* 95 Utah 572, 83 P. 2d 1010, and perhaps other cases. In some of these cases the decision was necessary for the determination of the case, and was not mere dicta. This rule is contrary to the group of decisions called the first group in the main opinion of which the author there says: "state the better and more practical rule." We agree with the rule approved in those cases, that a confession is not admissible in evidence unless it was voluntarily made; that this question must be determined by the court from all of the evidence from both sides bearing thereon; that if the court is satisfied from the evidence that the confession was voluntary, then the court admits the confession in evidence to the jury, together with all of the evidence on the question of whether it was voluntary, and the circumstances surrounding its being made, and from such evidence the jury must determine the weight and credibility to be given it, but may not determine its competency as evidence, that being a question for the court. This we understand is what the main opinion holds, and the Utah cases which hold contrary should be expressly overruled. See Wigmore on Evidence, Third Ed., Vol. III, Sec. 861, which says:

"The admissibility of the confession, as affected by the foregoing rules, is a *question for the judge,* on elementary principles defining the functions of judge and jury: [quoting from cases to that effect] This orthodox principle is well recognized in the majority of the jurisdictions.

"But in comparatively recent times the heresy of leaving the question to the jury has made rapid strides.

"To say that it is a question for the jury may mean one of two things. It may mean that the confession goes in any case to the jury to accept or to reject or to give such weight as the jury chooses; this practically abolishes all of the foregoing limitations, and would be in this aspect a desirable rule. But it may and commonly does mean that the jury may be allowed to *measure it by the foregoing legal tests,* and to reject it as a judge would if the tests are not fulfilled. This is decidedly improper; first, because it makes abject surrender of the fixed principle * * * that all questions of admissibility are questions of law for the judge only; secondly, because, in particular, the confession-rules are artificial, based on average probabilities or possibilities only, and do not attempt to measure the ultimate value of a given confession, and the tribunal which is to weigh all evidence finally ought not to be artificially hampered by them; thirdly, because the jury is not familiar enough with them to attempt to employ them. Nevertheless, many courts today hold that, after the judge has applied the rules and admitted the confession, the jury are to apply them again, and *by that test* may reject it. This unpractical heresy fails to appreciate the elementary canon of admissibility, and in that aspect its judicial extension has been a discouraging circumstance.

"In determining admissibility:

"(1) *The judge must hear the defendant's evidence* (including evidence from cross-examination of the prosecution's witnesses) upon the issue of voluntariness; although under the heterodox rule this could logically be dispensed with.

"(2) The *jury,* during the hearing of this evidence, *may be withdrawn,* as is proper during all proof and arguments upon questions of admissibility.

"(3) But, when a confession is ruled to be admissible, the same evidence and *all other circumstances affecting the weight of the confession* may be introduced for the jury's ultimate consideration." (Italics by author.)

Of course there is nothing to prevent the jury from determining for itself whether it was voluntary and if it so determines ignoring it, or giving so little weight to it because of the circumstances under which it was obtained, as practically to ignore it. But the instructions of the court will be different in the case where it is held that the ques-

tion of voluntariness is first for the court and then, if the evidence is in dispute, again for the jury than they would be in the case where the question is one finally for the court but after the confession is admitted, evidence of the circumstances under which it was taken is given to the jury. In the latter case the instruction would be to consider such evidence for the purpose of determining what weight should be given it. As intimated by the main opinion the end result as far as the jury mind is concerned will be much the same. The important thing is that the judge be convinced that the confession is voluntary before he gives it to the jury. He holds the trump card. Once given to the jury if it was in reality not voluntarily given, much harm may be done.

We agree with the holding that the court improperly commented on the evidence. If the evidence before the jury was insufficient to justify a verdict of ▮▮▮ murder, then their verdict should have been not guilty; because their guilt of any other crime, as the court properly instructed, was not and could not be submitted for their determination.

We concur in what has been said in reference to jurors and witnesses fraternizing during trials. From what has been said above it follows that we concur in the ▮▮ result reached by the main opinion and the propositions of law laid down, except as indicated otherwise by this opinion.

WOLFE, C. J., and McDONOUGH, J., concur in the opinion of Mr. Justice LARSON with such observations and limitations as are set forth in the opinion of Mr. Justice WADE.