STATE of Utah, Plaintiff and Respondent,

v.

Steven L. GRIFFIN, Defendant and Appellant.

No. 870108–CA.

Court of Appeals of Utah.

May 16, 1988.

Manny C. Garcia (argued), Joan C. Watt, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

Earl F. Dorius (submitted on briefs due to illness), Asst. Atty. Gen., Governmental Affairs Div., for plaintiff and respondent.

## OPINION

Before BENCH, BILLINGS and JACKSON, JJ.

BENCH, Judge:

Defendant Steven Griffin appeals from his felony convictions on two counts of sexual abuse of a child. Defendant argues his confessions were taken involuntarily and in violation of his right to counsel. He also contends the evidence was insufficient to support the convictions. We reverse and remand for a new trial.

On Saturday, February 15, 1986, nine-year-old Cammie K. viewed a public service message on television about sexual abuse. The program was directed at children, described sexual abuse, and encouraged children to tell their parents if they had been sexually abused. After the program, as her mother explained the importance of the program, Cammie began to cry and told her mother that defendant, her friend Angie's father, had touched her like that. Mrs. K. called the police. Deputies Schooley and Suarez and Detective Strong of the Salt Lake County Sheriff's Office arrived shortly thereafter. In a taped interview with Deputy Schooley and Detective Strong, Cammie told the officers that on several occasions, defendant had sexually abused her. Cammie also told the officers defendant had threatened to "smack" her if she told anyone what he did.

After the interview with Cammie, the officers went to defendant's house. Upon their arrival, the officers identified themselves and asked to speak to defendant privately. Defendant agreed, and a taped interview was conducted in the police car. Detective Strong first advised defendant of his *Miranda* rights which defendant waived and agreed to talk to the officers. Defendant vehemently denied all the allegations concerning Cammie. At one point during the interview, defendant said, "This is a lie. I'm calling an attorney." Detective Strong replied, "OK, are you saying

you don't want to talk anymore?" Defendant then said, "No, I ain't saying that, I'm just saying it's a lie. I am going to talk to an attorney." The interview continued. After persistent and at times coercive questioning, defendant confessed to anything and everything the officers alleged.[1] Upon conclusion of the interview, the officers placed defendant under arrest and transported him to the Salt Lake County Jail.

Two days later, Detective Strong took a tape recorder to the jail to again interview defendant. He asked the jailer for a room in which to conduct the interview, but was informed none was available except for the exercise compound. The compound had no furniture or electrical outlets. Once in the exercise compound, according to Detective Strong, defendant again waived his rights and then began to cry, saying he had a problem and needed help. Detective Strong again asked for a room and the trustees' day room was made available. Detective Strong and defendant sat down, Detective Strong plugged in the recorder, and the interview began. During the jail interview, defendant confessed to several incidents of sexual contact with Cammie. An information was filed two days later charging defendant with one count of rape of a child, a first degree felony in violation of Utah Code Ann. § 76–5–402.1 (1987), one count of sodomy of a child, a first degree felony in violation of Utah Code Ann. § 76–5–403.1 (1987), and two counts of sexual abuse of a child, a second degree felony in violation of Utah Code Ann. § 76–5–404.1 (1987).

Prior to trial, defendant filed a motion to suppress his two statements on the grounds of involuntariness and denial of right to counsel. After a hearing, the motion was denied. At trial, defendant and the officers testified concerning the first interview, but no tape or transcript thereof was offered into evidence. When the prosecution moved to play an edited tape of the second interview to the jury, defendant initially objected, but, after consulting with the court and the prosecution, stipulated to

its admission. A jury convicted defendant of the two sexual abuse charges and he was sentenced to serve two concurrent terms of one to fifteen years in the Utah State Prison.

On appeal, defendant argues the trial court erred in admitting testimony and evidence of his two alleged confessions. The state argues defendant waived appellate review of the admissibility of his two statements by failing to make timely, specific objections at trial.

■ In *State v. Lesley*, 672 P.2d 79, 82 (Utah 1983), the Utah Supreme Court held, "[A] specific objection is required even where a pretrial motion to suppress has been made." In *Lesley*, the trial judge was not the same judge who ruled on the pretrial suppression motion. This Court in *State v. Holyoak*, 743 P.2d 791 (Utah App. 1987), held the *Lesley* rule applies equally where the trial judge also hears the pretrial motion. However, in *State v. Johnson*, 748 P.2d 1069 (Utah 1987), the Utah Supreme Court, without acknowledging *Holyoak*, concluded the *Lesley* rule "does not require a defendant to object or renew his motion to suppress at trial where the trial judge is also the judge who ruled on the pretrial motion and where the record or transcript indicates that an evidentiary hearing was held." *Id.* at 1071. On the facts presented, Utah case law does not require defendant to renew at trial his motion to suppress in order to preserve the issue on appeal.

■ The state also argues that by expressly stipulating to admission of the second interview tape and transcript, defendant waived appellate review of their admissibility. When the prosecution moved at trial to admit a transcript of the second interview and to play the tape for the jury, defendant objected. After an off-the-record, side bar conference, the trial court stated, "There has been an offer of the exhibit and the Court will rule, I'll hold and reserve receiving that exhibit right now and allow counsel to work out something during the lunch hour on that particular exhibit." When court reconvened that af-

---

1. At trial, Detective Strong testified regarding defendant's confession in the first interview, "It was very sarcastic. I didn't take it as a confession."

ternoon, defendant expressly stipulated to admission of the tape and transcript. Defendant argues his stipulation was to the edited form of the transcript and tape and not to their truth or admissibility. In light of *Johnson,* defendant's initial objection, and his continued assertion of his statement's inadmissibility throughout the trial, we conclude defendant did not waive his objections to the second statement by stipulating to its admission.[2]

■ By denying defendant's motion to suppress, the court impliedly found the defendant's statements were voluntary and not taken in violation of his right to counsel. When reviewing a trial court's factual assessments underlying a decision to grant or deny a suppression motion, this Court will not disturb the court's determination unless the trial court was clearly in error. *State v. Ashe,* 745 P.2d 1255 (Utah 1987). A trial court's determination is clearly erroneous if, upon review of the totality of the facts and circumstances, we reach a firm and definite conviction that a mistake has been made. *Id.* at 1258; *State v. Hegelman,* 717 P.2d 1348 (Utah 1986).

■ At trial, defendant stipulated he knowingly waived his *Miranda* rights prior to the first interview in the police car. However, shortly into the interview and in response to Cammie's accusations, defendant stated, "This is a lie. I'm going to talk to an attorney." In *Miranda v. Arizona,* 384 U.S. 436, 444–445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court held, "If ... [defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." The Court continued:

The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Id.* at 445, 86 S.Ct. at 1612.[3] Defendant argues his statement was an unequivocal request for counsel, barring any further interrogation.

The United States Supreme Court further clarified its *Miranda* rule in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. at 490, 83 L.Ed.2d 488 (1984). The *Smith* Court stated, "On occasion, an accused's asserted request for counsel may be ambiguous or equivocal." *Id.* at 95, 105 S.Ct. at 493. In a footnote, the *Smith* Court summarized the three conflicting standards that have developed for determining the consequences of such ambiguities:

Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. Others have attempted to define a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. Still others have adopted a third approach, holding that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel.

*Id.* at 96 n. 3, 105 S.Ct. at 493 n. 3 (citations omitted). The United States Supreme Court declined to adopt any one approach.

---

**2.** Due to the constitutional questions at issue and the apparent understanding between counsel and the trial court as to defendant's stipulation, we address his objections on appeal. However, we encourage counsel and trial courts to prepare adequate records clearly setting forth specific grounds for objections to and stipulations for admission of evidence. *See State v. Gray,* 717 P.2d 1313 (Utah 1986) (record must reflect clear, specific objections to preserve appeal); *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040 (Utah 1983) (burden on parties to make certain record adequately preserves arguments for review).

**3.** Questioning may continue once counsel has been made available to defendant or if defendant himself initiates further communication with the police and the prosecution establishes voluntariness and a knowing waiver of right to counsel. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Moore,* 697 P.2d 233 (Utah 1985).

In the instant case, after defendant made his statement regarding calling an attorney, Detective Strong responded, "OK, are you saying you don't want to talk anymore?" The state argues Detective Strong's question, at least under the "clarification" approach recognized by the *Smith* Court, was appropriate. In support of this approach, the *Smith* Court cited *Thompson v. Wainwright,* 601 F.2d 768 (5th Cir.1979), and *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (App.1983).

In *Thompson,* the Fifth Circuit Court of Appeals cited its earlier decision in *Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979), that "an equivocal request for counsel, one accompanied by an expressed willingness to talk, did not preclude all further conversation between the suspect and the interrogating officer." 601 F.2d at 771. In *Nash,* defendant asked the officer if he had to request counsel in writing. The officer informed him he could do so orally. Defendant then requested to have counsel appointed. The officer then responded, "Okay. I had hoped that we might talk about this, but if you want a lawyer appointed, then we are going to have to stop right now." Defendant protested mildly that he wanted to talk. After ascertaining defendant's desire to talk without counsel, the officer asked him to sign a waiver and took his statement. The *Nash* court affirmed admission of the statement since an investigator may seek clarification of an equivocal request for counsel. In *Thompson,* the court emphasized, *"Further questioning* [after the equivocal request] *must be limited to clarifying that request* until it *is* clarified." *Id.* (emphasis in original). The *Thompson* court reversed the admission of defendant's statement because the post-equivocal request questioning amounted to arguing with defendant whether having counsel would be in his best interests and telling defendant what counsel's advice would be if he or she were present.

In *Moulds,* after defendant waived his *Miranda* rights, he asked the interrogating detectives for more information about the crimes under investigation. As a detective gave the information, defendant said, "Maybe (or "I think) I need an attorney."

One detective told defendant he had the right to an attorney, but the decision was his to make. The detective then proceeded to request defendant to make a written statement. The Idaho Court of Appeals, in affirming the suppression of defendant's statements, held, "[I]t would have been permissible and appropriate for the detectives to narrow their inquiries to determining whether [defendant] did, or did not, then want an attorney present. However, the detectives did not do so." 673 P.2d at 1083. *See also Giacomazzi v. State,* 633 P.2d 218 (Alaska 1981); *Cheatham v. State,* 719 P.2d 612 (Wyo.1986).

Like the above cited jurisdictions, we prefer a "pragmatic approach to a rigid rule that would bar all further questioning of the accused." *Moulds,* 673 P.2d at 1082. We therefore adopt the clarification approach and hold that when an accused makes an arguably equivocal request for counsel during custodial interrogation, further questioning must be limited to clarifying the request. If the request is clarified as a present desire for assistance of counsel, all questioning must cease as if an initial unambiguous request had been made. If, however, the accused, absent police persuasion, indicates he does not want counsel present at that time, the interrogation may continue. In the instant case, defendant's statement "I'm going to talk to an attorney" was arguably equivocal as to when he desired assistance of counsel. Detective Strong's attempt to clarify defendant's request was appropriate. Defendant indicated he would continue to talk and would later talk to an attorney. Defendant's first statement was therefore not taken in violation of his right to counsel.

Defendant next argues the officers' improper form of interrogation rendered his first statement involuntary. "In order for a confession to be admissible, it must be made freely and voluntarily; it must not be extracted by threats or violence or obtained by improper influence or promises." *State v. Watts,* 639 P.2d 158, 160 (Utah 1981). Confessions are presumed to be voluntary. *State v. Hinton,* 680 P.2d 749 (Utah 1984). In order to rebut the presumption of voluntariness, defendant must present sufficient

evidence to "reveal some physical or psychological force or manipulation ... designed to induce [him] to talk when he otherwise would not have done so." *State v. Hegelman,* 717 P.2d 1348, 1350 (Utah 1986). *See also Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (coercive police activity a prerequisite to finding a confession is involuntary under fourteenth amendment).

In *State v. Crank,* 105 Utah 332, 142 P.2d 178 (1943), the Utah Supreme Court, quoting *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), listed several examples of interrogative language other jurisdictions had held to be inducements sufficient to warrant suppression of the resulting confession. The coercive language includes:

Now, if you did break open the door, the best thing you can do is tell all about it ... and to tell the truth, the whole truth, and nothing but the truth.

It will be better for you to make a full disclosure.

The suspicion is general against you, and you had as well tell all about it.

I believe you are guilty. If you are you had better say so.

*Crank,* 105 Utah at 356–57, 142 P.2d at 189. In the instant case, a transcript of the first interview reveals the following similar language used by the two officers:

Do you realize how much easier this would make this on everybody if you simply admitted what you have done?

[Y]ou've got a serious problem in the area of sexual abuse, do you understand that?

Then why can't you just admit that there is a problem?

Don't you think it would be easier on your own peace of mind and all the little children concerned to tell us what has gone on?

The Utah Supreme Court refined its holding in *Crank* in *State v. Ashdown,* 5 Utah 2d 59, 296 P.2d 726 (1956). The *Ashdown* Court, adopting the general rule stated in 20 Am.Jur. *Evidence* § 508 (1939), held, "[T]elling the accused that it would be better for him to speak or tell the truth does not furnish any inducement, or a sufficient inducement, to render objectionable a confession thereby obtained, unless threats or promises are applied." 5 Utah 2d at 65, 296 P.2d at 731. In the instant case, the officers' adjurations to tell the truth were accompanied with the following threats and promises:

[Y]ou are going to be away from your daughter for awhile.

[I]n order for you to ever have a relationship with your daughter again then you're going to need to get some extensive help and after that time and only after that time would it be possible for you to be reunited with your daughter again. And in order for you to receive any help for the problem, you are going to have to admit there is a problem. Right now, I am only charging you with one. But more charges are going to follow.

It boils down to the fact that you did do it and you need some help and we can get you that help.

[W]hether or not you admit it to me, I'm going to build a case against you and I'm going to convict you.

As a result of this improper, coercive manner of interrogation, the following dialogue occurred:

If I admit to anything they say I did that would be the best to do?

That would be the best to do.

OK, I admit to everything. I done everything. Alright? I did it all.

What did you do?

Uh, let's see, what was it?

You tell me.

So you said I had intercourse with Cammie, OK, I did that.

.     .     .     .     .

So you didn't have intercourse with her?

No.

I thought you just told me you did.

I admitted to it.

Admitted to what?

Having intercourse with her.

Tell me about this.

There is nothing to tell. Whatever she said is right, I guess.

Well, now, that is not what we want Steven, we want the truth.

I told the truth to start out with.

The United States Supreme Court has held, "[C]ertain interrogation techniques ... are so offensive to a civilized system of justice that they must be condemned...." *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). We agree. In light of *Crank, Ashdown*, and the totality of the circumstances, we hold the manner of interrogation utilized by the officers in the instant case was so outrageous and coercive as to overcome defendant's will and "induce [him] to talk when he otherwise would not have done so." *Hegelman*, 717 P.2d at 1350. *See also Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed. 2d 922 (1963). We therefore conclude the trial court clearly erred in denying defendant's motion to suppress the first confession and admitting testimony concerning it into evidence.

■ Defendant next argues the trial court erred in admitting his second statement because he was not adequately informed of his rights prior to the custodial interrogation as required by *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. The state contends Detective Strong read defendant his rights and defendant knowingly waived them prior to the recorded second interview. Defendant denies being read or waiving his rights. In determining whether defendant made a valid waiver of his rights, we look at the totality of the circumstances. *Hegelman*, 717 P.2d at 1349.

The officers placed defendant under arrest at the conclusion of the improper, coercive first interview. They returned to defendant's home to inform his wife. Defendant asked his wife to call an attorney. Defendant and his wife both testified Detective Strong said that would not be necessary as a lawyer would be appointed at the jail. Detective Strong and Deputy Schooley both denied such a remark was made. They then took defendant to the Salt Lake County Jail. Defendant spent Saturday and Sunday in jail. While in jail, he asked the jailers on more than one occasion when he would be appointed an attorney, but never received a satisfactory answer.

Detective Strong returned the following Monday to interview defendant again. Detective Strong was the first person outside the jail that defendant spoke to while in jail, except for one phone call to his wife. Detective Strong made no inquiry into whether defendant had spoken to a lawyer, despite defendant's expressed intention in the first interview to contact a lawyer. Detective Strong testified that before he asked any questions, defendant began to cry and told him he had not been honest, he had a problem, and needed help. Defendant testified Detective Strong first offered him a cigarette, and then accused him of not being honest and told him he would get a conviction the easy way or the hard way. Defendant testified Detective Strong never read him his rights. He further testified Detective Strong wrote down the questions and answers and, during the interview, indicated which answers defendant was to give. According to defendant, Detective Strong threatened to let the other inmates know what defendant had done if he did not confess. Detective Strong denied both allegations. Defendant explained he was crying because he had just spoken to his wife who told him she was leaving him. Defendant had never before been in jail, nor did he have any criminal record.

After a review of the totality of the circumstances, especially in light of the first improper interrogation and the coercive threats made therein, we are left with a "firm and definite conviction" that defendant did not make a valid waiver of his rights prior to the second interview. The trial court clearly erred in denying defendant's motion to suppress and admitting the tape and transcript into evidence.

We conclude the erroneous admission of defendant's two statements constitutes reversible error. *See State v. Knight*, 734 P.2d 913 (Utah 1987). We therefore reverse defendant's convictions and remand for a new trial.

BILLINGS and JACKSON, JJ., concur.