Steven GRIFFIN and Dorothy Griffin, individually, and as Next Friends for Angie Griffin, a minor, Plaintiffs,

v.

James R. STRONG and Dennis Gale, and John Does I–V, individually, and in their official capacities, Defendants.

Civ. No. 86–C–894G.

United States District Court, D. Utah, C.D.

May 14, 1990.

Steve Russell, Kathryn Collard, for plaintiffs.

Patricia J. Marlowe, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly on January 22, 1990 for hearing on Plaintiffs' Motion for Partial Summary Judgment against defendant Strong. Plaintiffs were represented by Steve Russell and Kathryn Collard. Defendants were represented by Patricia J. Marlowe. After briefing by the parties and oral argument, the court took plaintiffs' motion under advisement. Now being fully advised, the court sets forth its Memorandum Decision and Order.

## BACKGROUND

Plaintiffs Steven and Dorothy Griffin, individually, and as Next Friends of their minor daughter, Angie Griffin, instituted this action for general and punitive damages under 42 U.S.C. section 1983 against defendant James R. Strong, a Salt Lake County Deputy Sheriff, and defendant Dennis Gale, a social worker employed by the State of Utah. This action arises out of alleged unlawful arrest, conviction and incarceration of plaintiff Steven Griffin on charges of sexual abuse of a child.

On February 15, 1986, the mother of nine-year-old Cammie K. reported to the Salt Lake County Sheriff's Office that her daughter claimed to have been sexually

abused by Mr. Griffin. Detective Strong along with two County deputies went to the K.'s home and conducted a taped interview with Cammie, where she told the officers that on several occasions Mr. Griffin had sexually abused her. After interviewing Cammie, the officers went to Mr. Griffin's home. Mr. Griffin was interviewed by Detective Strong and confessed to the alleged abuse, but only after alleged coercion by Strong. Mr. Griffin was arrested and placed in the Salt Lake County Jail. Two days later, Mr. Griffin was interviewed again by Detective Strong, and he confessed a second time after alleged coercion by Strong. Both of these interviews were tape recorded.

Prior to Mr. Griffin's criminal trial in Utah Third District Court, his attorney filed a motion to suppress the two statements on the ground that they were coerced and that he was denied his right to legal counsel. After a hearing, the motion was denied. At trial, Mr. Griffin and the officers testified about the first interview, but no tape or transcript thereof was offered into evidence. The prosecution moved to play an edited tape of the second interview to the jury, and the defendant stipulated to its admission after initially making an objection. Mr. Griffin was convicted by the jury on two counts of sexual abuse of a child and was sentenced to serve two concurrent terms of one to fifteen years in the Utah State Prison.

On May 16, 1988, after Mr. Griffin had been incarcerated for more than two years, the Utah Court of Appeals reversed Mr. Griffin's conviction and remanded the case for a new trial. *State v. Griffin*, 754 P.2d 965 (Utah App.1988). The Court of Appeals held that the trial court erred in denying Mr. Griffin's motion to suppress his first confession because it considered the confession to have been involuntarily given after coercive questioning by Detective Strong. *Id.* at 971. However, the Court of Appeals also held that Mr. Grif-

fin's first statement was *not* taken in violation of his right to counsel. *Id.* at 969. With regard to the second interview, the Court of Appeals held that the trial court erred in admitting the tape and transcript into evidence because Mr. Griffin did not make a valid waiver of his *Miranda* rights prior to the interview. *Id.* at 971.

Plaintiffs' Amended Complaint, filed June 28, 1989, contains allegations that defendants violated plaintiffs' constitutional rights in the course of arresting and prosecuting plaintiff Steven Griffin on charges of child sex abuse.[1] In the First Cause of Action, plaintiffs allege that Mr. Griffin was denied his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution by defendant Strong's refusal to allow Mr. Griffin access to legal counsel before obtaining a confession from Mr. Griffin. The Second Cause of Action is that Mr. Griffin's right against self-incrimination secured by the Fifth and Fourteenth Amendments was violated by defendant Strong's alleged use of "coercion, intimidation and threats ... in order to obtain a confession from plaintiff Steve Griffin." Plaintiffs' Third Cause of Action is that defendants Strong and Gale allegedly used threats and intimidation against the plaintiffs which deprived plaintiffs of their "right to family integrity, including their right to preserve the sanctity and continuation of their familial relationships, secured by the Fourteenth Amendment to the United States Constitution." Claims I and II are brought solely by plaintiff Steven Griffin, whereas Claim III is brought by all three plaintiffs.[2]

Plaintiffs' pending Motion for Partial Summary Judgment relates to the affirmative defenses asserted by defendant Strong in his Answer to plaintiffs' Amended Complaint. Defendant Strong's affirmative defenses sought to be dismissed by plaintiffs are that: (1) plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted; (2) the opinion of the Utah

---

1. The initial complaint in this case was filed pro se by Mr. Griffin on October 1, 1986, approximately three months after Mr. Griffin's trial in Utah Third District Court.

2. Plaintiffs' Fourth Cause of Action for punitive damages is not at issue in plaintiffs' present motion.

Court of Appeals reversing Mr. Griffin's conviction does not preclude defendant Strong from litigating similar issues in this action (no collateral estoppel); and (3) defendant is immune from liability in this case under the doctrine of qualified immunity. These three issues will be analyzed separately.

## ANALYSIS

### I. FAILURE TO STATE A CLAIM

Defendant Strong's first affirmative defense on which plaintiffs seek summary judgment is the defense that plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted. In order to determine the validity of this defense each of plaintiffs' three claims must be considered separately.

#### A. *Right to Counsel (Claim I)*

■ Plaintiff Steven Griffin alleges in his First Cause of Action that he was denied the right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution by defendant Strong's failure to allow Mr. Griffin access to legal counsel during his two custodial interrogations of Mr. Griffin. The law is clear that one's *Sixth Amendment* right to counsel does not attach until "formal initiation of adversary judicial proceedings." *Moran v. Burbine,* 475 U.S. 412, 431–32, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). In this case, adversarial judicial proceedings had not begun at the time of the interviews in question. Therefore, plaintiffs' Motion for Summary Judgment against defendant Strong's defense that claim I fails to state a cause of action is denied. Furthermore, in light of the authorities cited, and due to the fact that plaintiffs concede in their reply brief that the First Cause of Action is not actionable under the Sixth Amendment, that claim is hereby dismissed.

#### B. *Right Against Self–Incrimination (Claim II)*

■ Plaintiff Steven Griffin's Second Cause of Action is that defendant Strong allegedly used coercion in order to obtain his confession and that he was not afforded an opportunity to have legal counsel present during his interviews with defendant Strong, all in violation of Mr. Griffin's right against self-incrimination secured by the Fifth and Fourteenth Amendments to the United States Constitution.

It is alleged in the Amended Complaint that on two different occasions defendant Strong interviewed Mr. Griffin regarding his alleged sexual abuse of a child. Plaintiff claims that during the first interview he requested a lawyer but that defendant Strong nevertheless continued to question him. During the second interview, which occurred two days later in the Salt Lake County Jail, defendant Strong allegedly failed to tell Mr. Griffin of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he allegedly refused Mr. Griffin's request to speak to an attorney, and he allegedly threatened and intimidated Mr. Griffin in order to obtain a confession.

Plaintiff Steven Griffin argues that in *Rex v. Teeples,* 753 F.2d 840 (10th Cir.), *cert. denied,* 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985), the Tenth Circuit recognized a civil cause of action under 42 U.S.C. section 1983 for extracting an involuntary confession. Defendant Strong admits that the Tenth Circuit has recognized such a cause of action, but he argues that because this allegation is disputed and because this Court has not determined that he is precluded from making such a claim, he is "entitled to allege that plaintiffs' Complaint fails to state a claim in this regard."

Plaintiffs' motion attacking the affirmative defense of failure to state a claim raises the same issue with which the court would be confronted if defendant had moved to dismiss the Complaint for failure to state a claim. In such cases, *"the allegations of plaintiffs' complaint must be taken as true* and the complaint may be dismissed only if plaintiffs 'can prove no

set of facts in support of [their] claim[s] which would entitle [them] to relief.'" *Schaefer v. Wilcock*, 676 F.Supp. 1092, 1103 (D.Utah 1987) (emphasis added, brackets in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Of course, it is one thing to assert a cause of action and another to prove it.

In this case, plaintiffs' Second Cause of Action does *state* a valid cause of action for violation of Mr. Griffin's Fifth and Fourteenth Amendment rights against self-incrimination, which if established would be redressable under 42 U.S.C. section 1983. The necessary elements for a Fifth Amendment claim have been alleged by Mr. Griffin, and defendant Strong has not argued that there is such inadequate factual showing to support the claim that it ought to be dismissed before trial as a matter of law. Accordingly, plaintiffs' Motion for Summary Judgment is granted against defendant Strong's affirmative defense that the Second Cause of Action fails to state a claim upon which relief may be granted.

C. *Right to Family Integrity (Claim III)*

■ Plaintiffs' Third Cause of Action is that defendants Strong and Gale allegedly used threats and intimidation against the plaintiffs which deprived plaintiffs "of their right to family integrity, including their right to preserve the sanctity and continuation of their familial relationships, secured by the Fourteenth Amendment to the United States Constitution." Specifically, plaintiffs allege that defendants Strong and Gale used "threats, intimidation and orders to plaintiffs Steve and Dorothy Griffin to divorce and dissolve their marriage and family unit" and that Mr. and Mrs. Griffin "were both repeatedly warned by defendants Strong and Gale that the State of Utah would remove their daughter from their custody unless the Griffins did exactly as they were told by defendants Strong and Gale." Amended Complaint ¶¶ 49, 50. Plaintiffs also allege that these familial association threats were made with the intent of coercing a confession from Mr. Griffin, which resulted in his imprisonment for over two years. *Id.* at ¶ 52.

In *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Supreme Court explained that associational freedoms are liberty interests that may be protected by the Fourteenth Amendment. The Supreme Court recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 617–18, 104 S.Ct. at 3249. The Court further explained that family associations are the type of relationships that are entitled to constitutional protection:

> Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.

*Id.* at 619–20, 104 S.Ct. at 3250–51; *see also Smith v. Eley*, 675 F.Supp. 1301, 1307 (D.Utah 1987) (parent-child relationship is protected under Fourteenth Amendment).

The Tenth Circuit recognized a cause of action under section 1983 for deprivation of the right of familial association in *Trujillo v. Board of County Commissioners*, 768 F.2d 1186 (10th Cir.1985). The plaintiffs in *Trujillo* were the mother and sister of a man who died while incarcerated in a county jail. The Tenth Circuit stated that "an allegation of intent to interfere with a particular relationship protected by the free-

dom of intimate association is required to state a claim under section 1983." *Id.* at 1190. Unlike the case at bar, the plaintiffs in *Trujillo* did not allege such intent, so the court affirmed the district court's dismissal for failure to state a constitutional claim. Plaintiffs' Amended Complaint alleges the necessary intent element to maintain a section 1983 action under *Trujillo.*[3]

Defendant Strong argues that plaintiffs have failed to state a claim for deprivation of familial association because the deprivation suffered by plaintiffs was only temporary, i.e. for the two years that Mr. Griffin spent in the Salt Lake County Jail and in the Utah State Prison, whereas the deprivation suffered by the *Trujillo* plaintiffs was permanent. This court regards the asserted distinction to be immaterial. The Tenth Circuit did not limit its holding in *Trujillo* that a familial association claim can be actionable under section 1983 only for permanent deprivations, nor does defendant Strong provide any other authority in support of such a limitation.

Based upon the foregoing, plaintiffs' Motion for Summary Judgment is granted against defendant Strong's affirmative defense that the Third Cause of Action fails to state a claim upon which relief may be granted.

## II. COLLATERAL ESTOPPEL

■ The Utah Court of Appeals reversed and remanded Mr. Griffin's criminal conviction of child sex abuse, holding that his confessions were involuntarily given after coercive questioning by detective Strong, and that the trial court committed error in admitting these confessions into evidence. *State v. Griffin,* 754 P.2d 965 (Utah App. 1988). The State chose not to retry Mr. Griffin after the Court of Appeals decision, and Mr. Griffin was subsequently released from prison. Plaintiffs now seek a ruling from this court that defendant Strong is precluded from litigating issues decided by the Utah Court of Appeals. In this regard, plaintiffs urge this court to adopt the opinion of the Utah Court of Appeals as preclusive and binding in this civil rights case under the doctrine of collateral estoppel. The issue is before the court in the form of plaintiffs' Motion for Summary Judgment against defendant Strong's affirmative defense that he is not precluded from litigating issues in this case that were decided by the Utah Court of Appeals in Mr. Griffin's criminal case.

■ The Supreme Court explained in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), that federal courts traditionally have adhered to the doctrine of collateral estoppel, and "generally have also consistently accorded preclusive effect to issues decided by state courts." *Id.* at 94–95, 101 S.Ct. at 415; *see also Navajo Nation v. District Court for Utah County,* 624 F.Supp. 130, 35–36 (D.Utah 1985). The Court in *Allen* stated: "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." 449 U.S. at 94, 101 S.Ct. at 414. The four elements of collateral estoppel are:

(1) The issue decided in the prior adjudication was identical with the one presented in the action in question.

(2) There was a final judgment on the merits.

(3) The party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication.

(4) The issue in the first case was competently, fully, and fairly litigated.

*In re Lombard,* 739 F.2d 499, 502 (10th Cir.1984); *Searle Bros. v. Searle,* 588 P.2d 689, 691 (Utah 1978); *State v. Ruscetta,* 742 P.2d 114, 116 (Utah App.1987).

■ This case involves the issue of *offensive* collateral estoppel. Here, plaintiffs are attempting to use collateral estoppel as

---

**3.** Paragraph 52 of the Amended Complaint alleges that defendant Strong used threats and intimidation about the necessity of a divorce and dissolution of the Griffin family unit "with the knowledge, intent and purpose of subjecting these plaintiffs to severe emotional distress in order to coerce a confession from plaintiff Steve Griffin, and to destroy the Griffin family unit."

an *offensive* tool to preclude defendant Strong from making arguments and raising defenses that otherwise might be available to him. Offensive collateral estoppel occurs when a plaintiff seeks to foreclose the defendant from litigating an issue that the defendant has previously litigated unsuccessfully in a prior action. In contrast, *defensive* collateral estoppel occurs when a defendant seeks to estop a plaintiff from asserting a claim that the plaintiff previously had litigated and lost against another defendant.

In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court reasoned that offensive collateral estoppel should be analyzed differently than defensive collateral estoppel. The Supreme Court recognized the argument that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," and that its use "will likely increase rather than decrease the total amount of litigation." *Id.* at 329–30, 99 S.Ct. at 650–51. The Court noted several situations "where it might be unfair to apply offensive collateral estoppel," including "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 330–31, 99 S.Ct. at 651. Due to these various concerns the Supreme Court concluded in *Parklane Hosiery* that "the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Id.* at 331, 99 S.Ct. at 651.[4]

An important requirement of collateral estoppel implicated here is that the party against whom collateral estoppel is asserted must have been "a party or in privity with a party" in the prior adjudication. The purpose behind this requirement is to protect such a party from an unjust application of the results of the prior proceeding to the present one. Plaintiffs argue that defendant Strong was in privity with the State in Griffin's criminal case inasmuch as defendant Strong concedes that he was acting under color of state law when interviewing Griffin, and because Strong testified as a witness for the State.[5] Defendant Strong may have been in privity with the State of Utah in a general sense, but his interests in Griffin's criminal trial were much less personal and compelling than his interests at stake in the instant case. The central purpose of Strong's involvement in Griffin's criminal case was to help convict Griffin of his alleged crimes. *Detective* Strong has now become *defendant* Strong,

---

4. *Parklane Hosiery* was a stockholder class action for damages and rescission against a corporation and certain of its officers for allegedly issuing a false and misleading proxy statement. Prior to the plaintiffs' suit, the defendants had lost a civil action brought by the S.E.C. involving the same allegations. The plaintiffs in *Parklane Hosiery* sought to use offensive collateral estoppel to preclude the defendants from relitigating the false proxy statement issue. In other words, *Parklane Hosiery* involved two successive civil suits where the parties to whom collateral estoppel was asserted was the defendant in both cases. The case at bar involves a different and more problematic form of offensive collateral estoppel inasmuch as *plaintiff* Steven Griffin was the *defendant* in the prior action, and also the instant action is a *civil* suit arising out of a prior *criminal* case.

5. Plaintiffs cite *Conner v. Reinhard,* 847 F.2d 384, 394–96 (7th Cir.1988), as support. In *Conner,* the plaintiff sued numerous defendants under section 1983 for terminating her employment in violation of her rights under the First Amendment. The individual defendants asserted that the plaintiff's unsuccessful earlier action against their employer, the City of Green Bay, precluded the action. The Seventh Circuit held that claim preclusion (or res judicata) applied to the defendants in their official capacities, but did not apply to the defendants individually. The court reasoned: "An official-capacity suit is really just another way of suing the government. Therefore, a city official sued in his official capacity is generally in privity with the municipality." *Id.* at 394 (citations omitted).

In addition to the reasoning in the text of this opinion, *infra,* the rationale of the Seventh Circuit in *Conner* is inapplicable here. That case involved the use of *defensive claim* preclusion, rather than *offensive issue* preclusion (collateral estoppel) as in the instant case. Perhaps more importantly, unlike the *Conner* plaintiff, plaintiffs in the instant case cannot allege that defendant Strong acted in his official capacity for the State of Utah, when in fact he was an employee of Salt Lake County.

and *criminal defendant* Griffin is now *civil plaintiff* Griffin. Not only are the interests at stake in this case very different for both parties, but the burden of proof and available defenses are also different in this, the second case.

These concerns implicate another prerequisite of estoppel, namely whether Detective Strong had a "full and fair opportunity to litigate" the issues of the current case in the course of Mr. Griffin's criminal trial and appeal. In *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court denied the application of offensive collateral estoppel, reasoning that "in a criminal case, the Government is often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel." *Id.* at 22, 100 S.Ct. at 2007. Noting similar concerns, courts that have considered the offensive use of collateral estoppel by a section 1983 plaintiff arising out of acquittal or dismissal in a prior criminal prosecution generally have held that collateral estoppel should not apply to the section 1983 case.[6]

After careful consideration, this court is not satisfied that defendant Strong's interests were adequately protected or represented in the prior adjudication brought by the State. The court concludes that under the circumstances of this case it would be unfair to preclude defendant Strong from litigating issues in this case that were decided by the Utah Court of Appeals in plaintiff Steven Griffin's appeal of his criminal conviction. Accordingly, plaintiffs' Motion for Summary Judgment on the issue of collateral estoppel is denied.

## III. QUALIFIED IMMUNITY

Plaintiffs seek summary judgment on defendant Strong's affirmative defense of qualified immunity. Plaintiffs argue that defendant Strong is not entitled to this defense because the law against obtaining coerced confessions was "clearly established" at the time he interviewed Griffin, and the Utah Court of Appeals already has determined that Mr. Griffin's confessions were obtained illegally by defendant Strong. Defendant Strong agrees that the law prohibiting coerced confessions was and is clearly established. However, defendant Strong argues that he is entitled to assert the qualified immunity defense because *this* court has not yet determined whether Mr. Griffin's confessions in fact were coerced in violation of that clearly established law.

The Supreme Court held in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), that a governmental official will be immune from liability if the conduct alleged in the complaint did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Qualified immunity is a defense available to law enforcement officers. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Supreme Court in *Harlow* rejected a subjective inquiry into the governmental official's motives, as previously set out in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1972). Under the rule announced in *Harlow*, a reviewing court must determine "the objective reasonableness of [the] official's conduct as measured by reference to clearly established law." 457 U.S. at 818, 102 S.Ct. at 2738; *see also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Schaefer v. Wilcock*, 676 F.Supp. 1092 (D.Utah 1987).

■ Although both parties agree that the law regarding coerced confessions was "clearly established" at the relevant time,

---

**6.** *See generally* Annotation, *Res Judicata or Collateral Estoppel Effect of Prior Criminal Proceedings on Subsequent Civil Rights Action Brought Under 42 U.S.C.S. § 1983*, 68 A.L.R.Fed. 861, 888–91 (1984 & Supp.1989), annotating the following cases: *Davis v. Eide*, 439 F.2d 1077 (9th Cir.); *cert. denied*, 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971); *Warren v. Byrne*, 699 F.2d 95 (2d Cir.1983); *Brubaker v. King*, 505 F.2d 534 (7th Cir.1974); *Schertz v. Waupaca County*, 683 F.Supp. 1551 (E.D.Wis.1988); *Spartacus Youth League v. Board of Trustees*, 502 F.Supp. 789 (N.D.Ill.1980); *Smith v. Wickline*, 396 F.Supp. 555 (W.D.Okla.1975); *Ames v. Vavreck*, 356 F.Supp. 931 (D.Minn.1973).

neither party outlined in their briefs or at oral argument how defendant Strong's conduct was consistent or inconsistent with that "clearly established" law. The Court is unable to determine from the submissions filed whether the parties agree on the material facts at issue in order to decide the qualified immunity question as a matter of law. As the Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), "a party seeking summary judgment always bears the initial burden of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'which [the movant] believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)); *see also DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 719 (10th Cir.1988) and *Rich v. Dollar,* 841 F.2d 1558, 1565 (11th Cir.1988) (rule 56 summary judgment standard applies to qualified immunity issues). Furthermore, inasmuch as this court has concluded in part II of this opinion that the decision of the Utah Court of Appeal does not preclude defendant Strong from disputing similar issues of fact and law in this litigation, plaintiffs' reliance on that court's decision in support of their argument against defendant Strong's qualified immunity defense is misplaced. For the foregoing reasons, plaintiffs' Motion for Summary Judgment on the issue of qualified immunity is denied.

Based upon the foregoing, plaintiffs' Motion for Partial Summary Judgment against defendant Strong is (1) DENIED as to the defense that Claim I fails to state a claim for relief, and Claim I is also DISMISSED; (2) GRANTED as to the defense that Claim II fails to state a claim for relief; (3) GRANTED as to the defense that Claim III fails to state a claim for relief; (4) DENIED as to plaintiff's contention that the opinion of the Utah Court of Appeals in *State v. Griffin,* 754 P.2d 965, collaterally estops or otherwise precludes defendant Strong from litigating similar issues in this case; and (5) DENIED as to

defendant Strong's affirmative defense of qualified immunity.

IT IS SO ORDERED.